**SCHAFFRAN v. MT. VERNON–WOOD-BERRY MILLS, Inc.**

No. 5236.

Circuit Court of Appeals, Third Circuit.

April 19, 1934.

Rehearing Denied June 8, 1934.

THOMPSON, Circuit Judge, dissenting.

———◇———

Edward R. McGlynn, of Newark, N. J., for appellant.

Pitney, Hardin & Skinner, of Newark, N. J. (Shelton Pitney and Edward K. Mills, Jr., both of Newark, N. J., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

On April 23, 1930, Thomas Foxhall entered into a written agreement of guaranty

which, with the critical words emphasized by our italics, reads as follows:

"Whereas Winston Converting Company * * * is desirous of increasing its *credit limit* with Mount Vernon-Woodberry Mills, Inc.

"And Whereas Mount Vernon-Woodberry Mills, Inc. is willing that this *credit limit* should be increased provided the *present* indebtedness of Winston Converting Company to it is guaranteed and also that the *new credit limit* be guaranteed by good and sufficient sureties.

"Now Therefore This Agreement * * * between Thomas Foxhall *.* * and Passaic Engraving Company * * * parties of the first part, and Mount Vernon-Woodberry Mills, Inc. * * * party of the second part, witnesseth * * *.

"The party of the second part agrees to extend to Winston Converting Company a *credit limit* of Five Thousand ($5,000) Dollars.

"The parties of the first part do hereby jointly and severally guarantee the *payment* by Winston Converting Company of all its *present* indebtedness to Mount Vernon-Woodberry Mills, Inc., amounting to $3,659.-01. (Recovery on this phase of the guaranty is not involved in the suit.)

"And said parties of the first part do further agree that they will jointly and severally guarantee the *payment* of all *orders* of Winston Converting Company *accepted* by Mount Vernon-Woodberry Mills, Inc." and "waive any right to notice of *nonpayment* by said Winston Converting Company to which they may be entitled under the laws of this or any other state."

Conceiving that Foxhall had breached his contract, the Mount Vernon-Woodberry Mills, Inc. brought this suit, setting forth in its complaint (after amendment) two writings between itself and Winston Converting Company whereby the latter concern agreed to purchase from the former certain quantities of army duck, deliveries to be ordered from time to time, and alleging that Winston Company had refused to order out, or take delivery, or pay for the material so ordered or contracted for, with the result that the plaintiff was compelled to re-sell the goods at a loss of $5,408.57 for which it asks recovery from the defendant guarantor. Foxhall, by his answer, admitted the execution of the contract of guaranty but denied the allegations of the complaint imputing liability to him. He died before trial. His executrix appeared as defendant and adopted his answer.

The contract of guaranty calls for construction, as do also the instruments by which the goods were ordered or contracted for and on which the primary defaults were made. The question before the District Court, and now before this court on appeal, was whether the guaranty is for "payment" for goods which the Winston Company should "order" and actually receive up to the credit limit of $5,000 or is for performance by the Winston Company of "contracts" for goods, covering liquidated damages for breaches of the contracts.

Early in the pendency of the suit the defendant moved to strike the complaint as not showing a cause of action, thus raising that question on the pleadings. The judge, then sitting, construed the contract as one guaranteeing performance and denied the motion. Later the case proceeded to trial before another judge of the same district, who, though personally inclined to an opposite opinion, regarded himself bound by the construction of the first judge on the motion to strike as res judicata and accordingly construed the contract of guaranty as one not restricted to payment for goods ordered and received but as extending to performance of contracts entered into, for breach of which the guarantor is liable in damages. On cross-motions for directed verdicts, the learned trial judge embodied this construction of the contract in a judgment for the plaintiff for the sum of $5,525. The defendant appealed.

Although at the conclusion of the trial the parties recognized that the facts were practically undisputed and the issues were narrowed down to the question involved on this appeal, there was, as we read the record, no stipulation, written or oral, that a jury should be waived and the case submitted to the court under Rev. St. §§ 649, 700 (28 USCA §§ 773, 875). Instead, both parties moved for directed verdicts in their favor, respectively. Clearly that brought the case within the rule of Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654. The court, however, instead of directing the jury to render a verdict for one party or the other, dismissed the jury and entered judgment for the plaintiff. This, though an unusual way of putting into effect the Beuttell-Magone rule, is supported by some authorities. However, as the plaintiff, of course, has not appealed and as the defendant did not except and has filed no assignment pointing to error in this procedure, we shall pass it by without further comment

and shall address ourselves to the judgment as it stands'.

■ Preliminarily to the real issue, we hold against the contention of the plaintiff-appellee that the denial of the first judge to strike the complaint was res judicata or became the law of the case and is not reviewable on this appeal, and in consequence the meritorious question—that of construing the contract—is not before the court. Clearly, the order of the first judge was not a final judgment and therefore was not appealable. His refusal to strike, instead of being a final judgment, was merely an interlocutory order signifying that the case, as made in the complaint, should go to trial and there be decided on the evidence, which would, of course, include the contract and might also include the circumstances under which it was entered into. Newcomb v. Kloeblen, 77 N. J. Law, 791, 74 A. 511, 39 L. R. A. (N. S.) 724; Ryer v. Turkel, 75 N. J. Law, 677, 70 A. 68; Reed v. Merchants' Mut. Insurance Co., 95 U. S. 23, 24 L. Ed. 348; 4 Page, Law of Contracts, (Ed. 1920) § 2060. And this is what happened. Evidence bearing on the subject matter of the contract and the standing of the parties thereto was introduced—mainly by the plaintiff itself. We are therefore constrained to hold that the order of the first judge, refusing to strike the complaint, was not res judicata; and that his interpretation of the contract did not become the law of the case. We also hold, under New Jersey law as well as under federal law, that, although an appeal will not lie directly from an interlocutory order (unless expressly permitted by statute), such an order is reviewable as a part of the proceedings on appeal from the final judgment, if not involving a matter of discretion. Shipman on Common Law Pleading (Ballantine's Third Edition 1923) 537, also Footnote 29; Tomlinson v. Armour & Co., 75 N. J. Law, 749, 70 A. 314, 19 L. R. A. (N. S.) 923; Defiance Fruit Co. v. Fox, 76 N. J. Law, 482, 70 A. 460; Allgair v. Hickman, 82 N. J. Law, 369, 372, 81 A. 752; Ulman v. Greenwood, 84 N. J. Law, 284, 86 A. 411; 3 Corpus Juris, 432. An opposite practice would produce the odd situation of a court sustaining, on appeal, an obviously bad final judgment because ruled by an unappealable bad interlocutory order. The trial judge was free to construe the contract and decide the case without hindrance by the previous order. So the question before him was, as we have stated, whether the contract of guaranty is for payment for goods ordered and received by the Winston Company or for performance of its contracts to purchase goods.

The plaintiff-appellee plucks one sentence from the contract and, regarding it as the single operative expression of the parties, interprets it as a guaranty of performance by the Winston Company of its engagements to purchase goods, and even then without limit as to amount. It ignores the $5000 credit limit appearing elsewhere. The one sentence by which the contract, according to its contention, should be construed reads:

"The said parties of the first part (Foxhall and another) do hereby agree that they will jointly and severally guarantee the *payment* of all *orders* of Winston Converting Company *accepted* by Mount Vernon-Woodberry Mills, Inc."

If this sentence were the whole contract, there might be difficulty in construing its words. But it is only a part of the contract; indeed, it is only a part of a paragraph. The rest of the contract must be considered in order to determine what the parties intended. The second sentence previous to the expression quoted reads:

"The party of the second part (Mount Vernon-Woodberry Mills, Inc.) agrees to extend to Winston Converting Company a credit limit of Five Thousand ($5000) Dollars."

This deals with a credit limit, that is, a credit to be extended for goods ordered and delivered to the limit of $5000. Moreover, the contract of guaranty deals with the same thing in a preamble where it appears that the Winston Company was "desirous" of increasing its "credit limit" and the Mount Vernon-Woodberry Mills, Inc. was "willing" that "this credit limit" should be increased if the "new credit limit" were guaranteed.

■ We are aware of the general rule that, "If the recitals (in a contract) are clear and the operative part is ambiguous, the recitals govern the construction. If the recitals are ambiguous, and the operative part is clear, the operative part must prevail." Wilson v. Towers (C. C. A.) 55 F.(2d) 199, 200; Moore v. Baasch, 109 Wash. 568, 187 P. 388; Irwin's Bank v. Trust Company, 195 Ind. 669, 145 N. E. 869, 146 N. E. 909; Ross v. Ross, 233 App. Div. 626, 253 N. Y. S. 871. But in this contract of guaranty both recitals and at least one operative provision relate to the same thing—a "credit limit"—and are in accord with the other operative provision on which the plaintiff relies. Together, we think, they establish beyond successful contradiction that the parties were dealing with a credit

limit to be extended by one concern to another upon the giving of a guaranty—for what? For performance of future contracts for goods or "payment" of all "orders" of the Winston Company "accepted" by the Mount Vernon-Woodberry Mills, Inc. involving "credit" therefor within a certain limit?

A "credit limit" is in plain terms a credit with a limit as to amount which an expectant seller of goods extends to an expectant buyer, implicit in which (when operative) necessarily is the existence of a debt due by the buyer to the seller on an order of the former accepted and executed by the latter. The parties themselves recognized this when they stipulated that the "present indebtedness" of the Winston Company be guaranteed and "also that the new credit limit" be guaranteed. Clearly they were dealing with debts, present and prospective, and in doing so they drew a distinction between them. "Payment of all orders" means payment of all debts created by their execution. If no orders are executed and no debts created, no payments are due and, in consequence, no breach on which to call upon the guarantor has occurred unless we are to transpose the word "payment" into "performance" and construe the word "orders" as "contracts."

The next question is whether the two (so-called) orders, which the Winston Company breached by refusing to take the goods, were "orders" breached by non-payment or were "contracts" breached by non-performance. Both are alike except as to goods, prices, and dates. Taking one for example, it is entitled: "Sale Note." It is referred to in the body as "contract," also as "Order No. 5462." It is signed by both parties with the stipulation that the "obligations of the seller and buyer are subject to the conditions and agreements set forth on the reverse side hereof," where many conditions and agreements appear, with the concluding words: *"This constitutes* the entire *contract* between us for the above goods as accepted by us and entered."

So we construe these instruments, as did the parties, as contracts. In respect to guaranteeing performance of contracts of the Winston Company there is no word in the defendant's contract of guaranty. By the contract he guaranteed "payment" of "orders" of the Winston Company and waived notice of "non-payment" by the Winston Company from which we deduce the meaning that the guarantor would, within the credit limit of $5000 and without notice of "non-payment," pay for all goods ordered and received by the Winston Company for which it became indebted and for which it did not pay. This has been done. All goods shipped or delivered have been paid for. We cannot find that Foxhall guaranteed that the Winston Company would perform its contracts. The essence of his engagement is a guaranty of payment of orders executed, not of performance of executory contracts. This construction accords with the distinction between a guaranty of payment and one of performance made in a number of similar cases. De-Luka v. Goodwin, 142 N. Y. 194, 36 N. E. 1056; Beagle v. Cable, 55 App. Div. 155, 66 N. Y. S. 809; McAfee v. Wyckoff, 44 Misc. 380, 89 N. Y. S. 996, affirmed 112 App. Div. 892, 97 N. Y. S. 1140; Whitall-Tatum Co. v. Manix, 61 Misc. 615, 113 N. Y. S. 1010; Acme Brick Co. v. West (Tex. Civ. App.) 215 S. W. 476; Warner Gear Co. v. Bergdoll, 253 Pa. 164, 97 A. 1085; 28 Corpus Juris 953. From these cases and from the case in hand the two decisions in Wheeler v. Krohn, Fechheimer & Co., 9 Ala. App. 409, 64 So. 179 and Cumberland Glass Mfg. Co. v. Wheaton, 208 Mass. 425, 94 N. E. 803, on which the plaintiff mainly relies, are distinguishable.

The judgment is reversed.

THOMPSON, Circuit Judge (dissenting).

I think the judgment should be affirmed. Under the terms of the contract in suit the parties of the first part "agree that they will jointly and severally guarantee the payment of all orders of Winston Converting Company accepted by Mount Vernon-Woodberry Mills, Inc." In the majority opinion the contract is construed to mean that the guaranty is for payment up to the credit limit of $5,000, for goods which the Winston Converting Company should order and actually receive. Such construction, in my view, is not justified, for nowhere by its terms does the contract require that the goods ordered should be actually received. I find no ambiguity in the quoted provision. In my judgment, when the Mount Vernon-Woodberry Mills, Inc., accepted the orders of Winston Converting Company and performed by manufacturing the goods ordered, it became entitled to recover for its loss up to the credit limit of $5,000. Being of the opinion that the contract has not been construed in accordance with its plain terms, I am constrained to record my dissent.