14636

ABLE v. EQUITABLE LIFE ASSUR. SOCIETY OF THE
UNITED STATES *ET AL.*

(195 S. E., 652)

October, 1936.

*Messrs. Thomas, Lumpkin & Cain* and *Benet, Shand & McGowan,* for appellants,

*Messrs. D. McK. Winter* and *U. L. Rast,* for respondent,

March 9, 1938.

The opinion of the Court was delivered by Mr. Justice Bonham.

Since the parties in the record style themselves plaintiff and defendants—the one plaintiff-respondent, the others defendants-appellants—it will simplify matters if we designate them plaintiff and defendants in this opinion.

The action is founded upon allegations of fraud and deceit praticed on the plaintiff by the defendants.

The burden of the complaint is: That plaintiff was more than twenty years in the employ of the defendant Standard Oil Company at Columbia. In accordance with its custom, this defendant carried a plan of insurance whereby its employees were insured for life and against sickness, disability, and permanent and total disability. About 1932 this defendant changed its plan of insurance on its employees, and entered into an agreement with its codefendant, the Equitable Life Assurance Society, for insurance on its employees, and pursuant to that agreement an insurance certificate was issued by the insurance company to the plaintiff, *which certificate embodied the contract between the plaintiff and the insurance company.* (Italics ours.)

That the said plan was effected for the benefit of Standard Oil Company, for the purpose of relieving it from its insurance liability to its employees, including this plaintiff. That deductions from the wages of plaintiff were taken by the defendant, Standard Oil Company, to pay the premiums on his insurance. That plaintiff's certificate, which remained in his possession unchanged, was in the sum of $2,000.00 and continued to be in full force and effect. About July, 1934, the defendants obtained plaintiff's signature to a paper

purporting to be an agreement waiving disability benefits under the contract of insurance, and consenting to changes therein, but plaintiff has no knowledge of signing an instrument of this nature, and his signature thereto was obtained by fraudulent and deceptive means and by overreaching and coercing plaintiff to sign the same, and he had no knowledge of the contents thereof, and there was no consideration therefor. That the acts of defendants hereabout "were deliberate, intentional, fraudulent and unlawful, and parts of a design, plan and scheme to cheat, swindle, defraud, rob and chisel plaintiff out of his rights, protection, privileges, advantages and other vested interests in and under said policy." The demand is for $3,000.00 damages, actual and punitive.

. The answer of the insurance company admits its corporate capacity; alleges that it has no knowledge nor information as to the things alleged in Paragraph 2 of the complaint; therefore denies them. Answering Paragraph 3, it admits that it issued and delivered to Standard Oil Company its group policy of insurance No. 3714, dated January 1, 1932, whereby it agreed to insure the lives of all the employees of said company who shall have made written application therefor, and such group policy was issued, delivered, and accepted subject to the terms and conditions thereof; that pursuant to application it issued its individual certificate, as provided for in Group Policy No. 3714, S. C., 145, in the sum of $2,000.00, dated January 1, 1932, to the plaintiff herein; that said certificate was delivered to and accepted by him subject in all respects to the terms, conditions, and limitations thereof, as well as to the terms, conditions, and limitations of the group policy. Defendant admits that the said certificate and group policy provided for the payment to plaintiff of certain benefits if he became disabled within the times, definitions, and provisions of said certificate and group policy, and gave notice thereof within the time and in the manner provided for in such certificate and group policy; defendant craves reference to the original certificate and group policy. That the amount of the certificate

was, in the exercise of the right reserved therein, reduced as of July 1, 1933, from $2,000.00 to $1,000.00, pursuant to the request and instructions from said Standard Oil Company; that as of July 1, 1934, the amount of said certificate was increased from $1,000.00 to $2,000.00, but the certificate issued to evidence the insurance thus granted did not contain total and permanent disability benefit provisions, and the certificate terminated as of July 31, 1935, when the plaintiff ceased to be in the employ of Standard Oil Company. It denies the allegations contained in Paragraph 4, and, for answer, alleges that effective July 1, 1934, the group policy of insurance was amended so as to eliminate the disability benefit provision thereof as contained in the certificates issued thereunder, including that issued to plaintiff; and on July 7, the plaintiff executed an instrument in writing acknowledging the receipt of a booklet containing the group life insurance plan of Standard Oil Company (of New Jersey), as amended, effective July 1, 1934, to provide, among other things, for the elimination of the total and permanent disability benefit provisions thereof, and agreed that said acknowledgment shall constitute his acceptance of the terms of such amended plan. Further, that the amendment to the group policy and the certificate thereunder was made in accordance with the rights therein reserved, and that plaintiff freely, voluntarily, and of his own volition, with full knowledge of all facts, acknowledged and agreed to such amendment. Denies specifically that either of the defendants induced the execution of said acknowledgment by fraudulent or deceptive practices.

Denies each and every allegation of the complaint not above admitted.

Denies upon information and belief that, even if plaintiff is now totally and permanently disabled, such disability did not have its onset until long after the termination and cancellation of the disability provisions contained in the group policy and certificate of insurance, and, further, that plaintiff gave no notice of such alleged disability, nor furnished

any proofs thereof until more than one year after the alleged onset of such disability, and the cancellation of the disability benefit provisions. Denies that plaintiff while in the employ of Standard Oil Company, and while said certificate was in force, was so disabled by bodily injury or disease as to entitle him to the payment of any sum by this defendant.

For a second defense: That heretofore plaintiff brought action in the County Court for Richland County against this defendant to recover for total and permanent disability, claiming under the certificate of insurance upon which the present action is founded. That on the trial of that case he admitted the execution and delivery of the instrument acknowledging and acquiescing in the elimination of the total and permanent disability provisions from his certificate. He thereupon moved the Court for a voluntary nonsuit, which motion was granted. That the costs of that suit were taxed against plaintiff and have not been paid. This defendant pleads that the failure of plaintiff to pay these costs estops him from further prosecuting this action against it, and is a bar to his action against it.

The defendant, Standard Oil Company, for answer, says: It admits Paragraph 1, and so much of Paragraph 2 of the complaint as alleges that plaintiff was employed by it for a period of more than twenty years; admits that in the year 1932 it entered into a contract with the defendant, Equitable Life Assurance Society, for the insurance of its employees, pursuant to which a certificate was issued to this plaintiff by said society. Defendant demands the production of said certificate and the amendments thereto for the terms of the contract between plaintiff and Equitable Life Assurance Society. Defendant denies that said insurance was taken out for the benefit of this defendant, and to relieve it of any insurance liability to its employees, but, on the contrary, alleges that said insurance was taken out for the benefit of its employees, and while said employees, including this plaintiff, paid a part of the premium for this insurance, this defendant paid a part thereof, which premiums were paid to the

society for the issuance of the said insurance, and for which this defendant received no benefit other than the insurance of its employees.

Answering Paragraph 4, defendant admits that in July, 1934, the plaintiff signed an instrument in writing waiving disability benefits under the contract of insurance and consenting to certain changes therein; but denies that said signature of the plaintiff was obtained by any fraud or overreaching, but alleges that it was signed by the plaintiff with full knowledge of its contents. Defendant further denies that said changes were made without consideration to the plaintiff, and denies that plaintiff was at that time, or any other time, entitled to any disability benefits under said policy of insurance.

Answering Paragraph 5, defendant denies that changes made in the policy were without the knowledge and consent of plaintiff, but alleges that plaintiff was fully informed thereof; and that such changes as were made, were made within the right of the society under its policy contract, and of this plaintiff was fully informed. Denies that plaintiff has any claim for total and permanent disability under said policy of insurance, against it.

Denies the allegations of Paragraph 6 and all other allegations of the complaint not specifically admitted.

The case was tried by Judge Holman and a jury, and resulted in a verdict for the plaintiff. At the proper times, motions were made by the defendants for nonsuit, directed verdict, and new trial, all of which motions were denied.

Both of the defendants appeal upon exceptions which charge error in the admission of testimony, the refusal of the motions for nonsuit, directed verdict and new trial, and for errors in the charge.

If we do not specifically cite and determine each exception, all of them will have been considered, and in effect determined by the conclusions and findings of the Court.

The gravamen of plaintiff's action is thus stated in his complaint: "The defendants herein obtained his signature to

a certain paper purporting to be an agreement waiving disability benefits under the said contract of insurance and consenting to certain changes therein, but that plaintiff had no knowledge of signing any instrument of this nature, *and that his signature was obtained thereto by deceptive and fraudulent means, and by overreaching and coercing plaintiff to sign the same."* (Italics added.)

On the trial of the case, when asked by the Court to state the nature of his action, plaintiff's counsel said:

"Our theory is that the whole plan and system was conceived in fraud and deceit.

"The Court: 'Actionable fraud?'

"Mr. Winter: 'Actionable fraud, yes, sir'."

In the case of *Halsey v. Minnesota-S. C. Land & Timber Co.,* 174 S. C., 97, 177 S. E., 29, 37, this Court, after quoting from *Southern Iron & Equip. Co. v. Bamberg, E. & W. Ry. Co.,* 151 S. C., 506, 521, 149 S. E., 271, said: "To constitute actionable fraud, it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury."

This doctrine was approved in the later case of *Waring v. South Carolina Power Co.,* 177 S. C., 295, 181 S. E., 1.

It is said in 26 C. J., 47, that the burden of proving all of the foregoing elements of fraud is on the plaintiff, and the failure to prove any one of them is fatal to recovery.

It is elementary law that fraud must be proved and cannot be presumed or implied.

We have read with especial care the parol and documentary evidence in this case, and are compelled to the conclusion that the plaintiff has failed to carry this burden of proof. Unless he has shown by the greater

weight of evidence that he was induced by "fraudulent and deceptive means, and by overreaching and coercing" by the defendants to sign the written instrument by which he consented to and acquiesced in the eliminating from his certificate of insurance the disability benefits, he has failed to prove the "actionable fraud," upon which he says his action is founded.

He alleges further that the "plan or system" by which he was induced to sign the said written instrument was in pursuance of an agreement between the defendants to release the Standard Oil Company of its liability to its employees under the group policy of insurance, and fraudulently to deprive this plaintiff of his disability benefits under his certificate of insurance, issued under the group policy held by Standard Oil Company, and issued by the Equitable Assurance Society.

What are the facts? Plaintiff is a Negro. He had been in the employ of Standard Oil Company for about twenty years. He alleges that he had great confidence in the officers and employees of this company; that he is an unlettered person, and cannot read much or write well; that taking advantage of his ignorance and confidence, he was induced to sign this instrument of writing. He undertakes to sustain these allegations by his own testimony and that of other persons, but he relies chiefly upon his own evidence to bear out these essential allegations of his complaint. We do not think he has succeeded.

For instance, the following is taken from the record; it is testimony given by plaintiff under cross examination:

"Q. Now, Henry, nobody made you sign this paper, did they? A. No, sir; no, sir, but I always signed them when they asked me to.

"Q. Nobody told you you had to sign it, did they? A. No, sir; if they had, I suppose I would have got it read to me.

"Q. Nobody represented to you what was in this paper, did they? A. No, sir.

"Q. You had all the opportunity or chance you wanted to have it read to you and to understand it if you had wanted, hadn't you? A. Yes, sir; I could have had it read.

"Q. Nobody refused to read it to you, did they? A. No, sir. Nobody refused to read it."

The plaintiff seeks to pose as an illiterate, ignorant person, yet for twenty years he drove a tank wagon or truck for Standard Oil Company from which truck gasoline, oil, and other products of the company were sold by him. Each morning he left the warehouse with his equipment of products, for which he gave a receipt; he was required to keep an account of his cash and credit sales for the day, and on his return to the warehouse each evening he was required to make and file a report of his operations for the day, showing how much he had sold and how much of each product he still had on hand; and to turn over the cash he had on hand, and produce his credit vouchers. It is in evidence that he did all of his business, requiring the calculation of amounts due for fractional parts of his sales, and the keeping of written accounts, with success. There was evidence that he was as good a salesman and tank truck driver as the company had in its employ. That he was a good business man is evidenced by the fact that he saved his money and bought and owned his own home. He had a filling station at Waverly from which he sold the usual commodities kept at such places, and in addition sold wood and coal; operated another filling station on the Newberry road, and operated a cafeteria.

It is unbelievable that a man of his experience and ability was induced by fraudulent and deceptive means, and by overreaching and coercion, to sign a paper, touching his own business, without reading it, or having it read to him, and in ignorance of its contents. We find no evidence to sustain such a charge. and it may not be sustained by presumption or implication of fraud.

It is strange that plaintiff did not bring his first action on the ground of the present one. He brought his first action to

recover for total and permanent disability under his certificate of insurance, and when, on that trial, he was confronted with the paper he had signed, which he now seeks to repudiate, he took a voluntary nonsuit. If it is true that he was defrauded and deceived, overreached, and coerced to sign that paper, he knew it when he brought the first action. If he signed that paper without reading it or having it read to him, he cannot now be relieved of the consequences of his own negligence.

Even before the case of *J. B. Colt Co. v. Britt,* 129 S. C., 226, 123 S. E., 845, 847, the Courts had laid down the rule, emphasized in the *Colt v. Britt case,* as follows: "It involves the logical adjustment upon sound principle or principles of two distinct policies of the law. One is that no person should be permitted to found an enforceable right upon fraud; the other is that the public interests require that commercial transactions be safeguarded, negligence discouraged, and the opportunity for and temptation to perjury minimized, by attaching to a written contract a certain conclusive force or artificial sanctity as the memorial of the transaction it purports to evidence. As an outgrowth of the latter policy, we have the two familiar general rules: (1) That a written contract cannot be varied by parol or extrinsic evidence, and (2) that one cannot avoid a written contract into which he has entered on the ground that he did not attend to its terms, that he did not read the document which he signed, that he supposed it was different in its terms, or that it was a mere form. 13 C. J., 370, § 249. The latter rule obviously rests upon the basic premise that it is a duty owed by every contracting party to the other party and to the public to learn and know the contents of a written contract before he signs and delivers it."

This doctrine has been affirmed by this Court in too many cases to permit of their being reproduced here. We may, however, cite the case of *Dukes v. Life Ins. Co. of Va.,* 184 S. C., 500, 193 S. E., 36, filed October 6, 1937. That, too, was an insurance case founded upon fraud and deceit. The

·plaintiff alleged that she had applied for one sort of a policy and the insurance company gave her a different one. That she did not read or examine the policy given her, but put it away and kept it for ten years, at which time she supposed that it matured and she would be paid the face value of the policy. She then discovered for the first time that it was not the policy she had applied for. She sued, alleging that she had been deceived by the deceit and fraudulent representations of the agent of the company. The Judge of the Circuit Court directed a verdict for the defendant. This Court affirmed his order upon the strength of the *Colt v. Britt case, supra; Hood v. Life & Casualty Ins. Co.,* 173 S. C., 139, 175 S. E., 76, 77; *Baldwin v. Cable Co.,* 78 S. C., 419, 59 S. E., 67, 68; *Frierson v. Casualty Co.,* 168 S. C., 178, 167 S. E., 232.

In the *Baldwin case, supra,* Mr. Justice Woods, for the Court, said: "The rule is a person who is unable to read is bound to have the paper read to him before signing, just as a person who can read is bound to read it before signing; and failure by such illiterate person to take this precaution will ordinarily be regarded such gross negligence as will estop him from avoiding the contract." *Citing Montgomery v. Scott,* 9 S. C., 20, 30 Am. Rep., 1.

Mr. Chief Justice Stabler, who wrote the opinion in the *Hood case, supra,* quotes with approval the above excerpt from the *Baldwin case.*

If the plaintiff in the present case has suffered a loss by reason of signing the written instrument which eliminated the disability benefits from his certificate of insurance, it was due to his own gross negligence, and he has no one to blame but himself.

The plaintiff alleges that his loss and damage were due to the acts of the defendants in pursuance of a fraudulent plan, design, and scheme to cheat, defraud, and swindle plaintiff out of his irghts, protection, privileges, advantages, and vested interests in said policy. There is an utter lack of evidence to sustain such allegation of fraudulent plan or scheme

on the part of defendants; as there is a lack of evidence to
sustain the allegations that plaintiff was induced to sign the
written instrument, by which he consented to the elimination
of total and permanent disability benefits from his certificate,
by fraudulent and deceptive means, and by overreaching and
coercing plaintiff. Plaintiff relies upon the fact that the
amount of his certificate of insurance was reduced from
$2,000.00 to $1,000.00 to show fraud and deceit. It is in
evidence that this reduction was made because plaintiff's
wages were reduced, and the reduced amount of insurance
was in accord with his reduced wages to pay the premium.
Later the amount of insurance was restored to $2,000.00.
When plaintiff's employment by Standard Oil Company was
terminated, he asked Mr. Graves of that company what his
rights were under his policy. At Mr. Graves' request, Mr.
J. H. Miller, the agent of Equitable Life Assurance So-
ciety, saw the plaintiff on two occasions and explained to
him his right to convert his group insurance into ordinary
life insurance, without standing a physical examination. The
plaintiff consulted his attorney at that time, Mr. Herbert,
who advised him that his insurance under his certificate ex-
pired when his employment by Standard Oil Company
ended, but that he had the option of taking some small sum,
or of carrying it over for something like ten years and get-
ting a larger amount. "I showed him if he cashed it now,
he would get $167.00, whereas if he waited the ten years,
he would get an annuity of twenty-three dollars a month."

It is in evidence that the Standard Oil Company main-
tained a sick benefit for its employees; this had nothing to
do with the life insurance; nor with the annuity plan which
the company encouraged and helped its employees maintain.

The plaintiff charges in his complaint, and seeks to show,
that he was deceived, overreached, and coerced into signing
the agreement by which he consented to the elimination from
his certificate of insurance the provision for disability bene-
fits yet it is uncontradicted evidence that every employee of
the company, carrying one of these certificates, signed a like

agreement. There is no evidence that any other one of them was so deceived, overreached, or coerced. It stretches credulity to accept the suggestion that the company would have undertaken to deceive, overreach, and coerce all of its numerous employees, in every rank of employment; some of them would have read the document and discovered the hidden joker, if there was one.

When his employment ceased, he received from the company the sum of $1,260.00, which was the annuity, or thrift plan of the company, and two weeks' salary payoff allowance.

It seems to us that this evidence absolves the defendants of the charge that they entered into an agreement, plan, design, or scheme to defraud and swindle the plaintiff by inducing him by fraudulent and deceptive means, and by overreaching and coercing him, to sign the document by which he consented to the elimination from his certificate of insurance, issued under the group policy, of the provisions for total and permanent disability.

Our conclusion is that the trial Judge erred in refusing to direct a verdict in favor of the defendants.

Having thus concluded, it is not necessary to pass in detail upon the exceptions.

The judgment of the lower Court is reversed, and the case is remanded to that Court, with direction to enter judgment for the defendants.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.