## PROVIDENT LIFE & ACC. INS. CO. v. ANDERSON.

## SAME v. COCA-COLA BOTTLING CO. OF GREENVILLE, S. C. (two cases).

### Nos. 5689–5691.

Circuit Court of Appeals, Fourth Circuit.

March 8, 1948.

John A. Chambliss, of Chattanooga, Tenn., and C. F. Haynsworth, Jr., of Greenville, S. C., for appellant.

C. Granville Wyche and Alfred F. Burgess, both of Greenville, S. C., for appellees.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This appeal involves the interpretation of three substantially identical policies of insurance issued by the Provident Life and Accident Insurance Company (hereinafter called the Company) on the life of Waddy M. Anderson (hereinafter called the insured). The three policies were ordinary 20-payment life insurance contracts of $25,000 each, one of which was payable to the wife of the insured and the other two to the Coca-Cola Bottling Company of Greenville, South Carolina, of which the insured was the General Manager at the time of his death. The insured was the owner of the policy payable to his wife; the Coca-Cola Bottling Company of Greenville, South Carolina, was the owner of the two policies payable to it and had the right to change the beneficiary.

At the bottom of the first page of each policy and at the end of the clause entitled "When policy is incontestable," the following words had been added by means of a rubber stamp:

"War and Aviation Clause Attached"

Affixed to and a part of each policy was a page entitled "War Clause" which contained the following provisions:

"This policy is issued subject to the following conditions and limitations which shall apply notwithstanding any conflicting provision of the policy.

"If the death of the Insured shall occur:

"1. while serving outside the continental limits of the United States in the military, naval or air forces of any country engaged in war regardless of the cause of death, or anywhere within six months following termination of such service if death is a direct or indirect result of injuries incurred or sickness or disease contracted while in such service; or

"2. while serving within the continental limits of the United States in an air force of any country engaged in war regardless of the cause of death, or within six months following termination of such service, if death is a direct or indirect result of injuries incurred or sickness or disease contracted while in such service; or

"3. as a result of operating or riding in any kind of aircraft, except as a fare-paying passenger in a licensed passenger aircraft operated by a licensed pilot on a regularly scheduled flight between definitely established airports within the continental limits of the United States; or

"4. within two years after the date of issue of this policy as a result of injuries incurred or sickness or disease contracted while traveling or residing as a civilian outside the continental limits of the United States and as a result of war or any act of war, then, provided this policy is in force, the amount payable shall be the total amount of the premiums paid without interest or the life insurance reserve, whichever is greater, but in no event more than the sum insured."

The insured held a private pilot's license and was the owner of his own airplane. On October 8, 1945, this plane piloted by him, crashed and he sustained injuries from which he died about a week later. The insured, at the time of his death, had no connection whatsoever with the military or naval services, and the flight which resulted in his death had been made solely for reasons of personal pleasure or business.

Upon the refusal of the Company to pay the full amounts of the policies, three civil actions were instituted by the beneficiaries, one action on each policy, in the Court of Common Pleas for Greenville County, South Carolina; all three actions were removed by the defendant Company to the United States District Court for the Western District of South Carolina, where these actions were tried before the District Judge without a jury. From judgments entered by the District Court in favor of the plaintiffs in all three cases, appeals have been taken to us. Since the provisions in question are identical in all three policies, reference by us to one policy is understood to include all three policies.

The District Court, relying upon the general rule that ambiguity in an insurance policy is to be resolved against the insurance company, construed the policies here involved to mean that the Company was exempt from liability *only* if death resulted from aviation connected with the war effort; therefore the Company assumed the risk of death caused by peacetime civilian air travel. In reaching this conclusion, the District Judge reasoned as follows: " * * * the insurer offered to the insured a policy of insurance containing a provision which it designated as a 'War Clause'. That designation is an evidence of the insurer's interpretation of the provision. The insured evidently accepted it as such and acted accordingly. The Company having represented the provision to be a war clause when it was selling the policy, it would be unjust and inequitable to allow it now to say, after the death of the insured, that the clause which it called a 'War Clause' is not in fact such, but is something else."

■ The meaning intended to be conveyed by the section entitled "War Clause" seems to us so clear and unambiguous that we are forced to conclude that the lower court erred in reading an ambiguity into the policies. The rule of strict construction against an insurer only serves the purpose of tipping the scales against the insurer when other aids to interpretation are in equipoise and the policy may reasonably be given one of several constructions. Gulf Refining Co. v. Home Indemnity Co., 8 Cir., 78 F.2d 842; Walker v. Commercial Casualty Ins. Co., 191 S.C. 187, 4 S.E.2d 248; Haselden v. Standard Mutual Life Ass'n, 190 S.C. 1, 1 S.E.2d 924.

■ A stamped notation on the policy is a part of the contract of insurance. Hatch v. Turner, Tex.Sup., 193 S.W.2d 668; Smooth v. Metropolitan Life Ins. Co., La.App., 157 So. 298; Vancouver Lumber Co. v. Home Ins. Co., D.C., 3 F. Supp. 414, affirmed 2 Cir., 68 F.2d 1019. See also Graham v. Business Men's Assur. Co. of America, 10 Cir., 43 F.2d 673; Walker v. Commercial Casualty Ins. Co., supra. Some courts have held that the stamped words are controlling even when they are in conflict with the printed provisions of the policy. New York Life Ins. Co. v. Hiatt, 9 Cir., 140 F.2d 752, 168 A.L.R. 551; Hatch v. Turner, supra; Givens v. Ætna Life Ins. Co., Mo.App., 59 S.W. 2d 761; Trousdell v. Equitable Life Assur. Soc., 55 Cal. App.2d 74, 130 P.2d 173, 990.

The words, "War and Aviation Clause Attached" are stamped on the bottom of the front page of the policy in letters of approximately the same size as the regularly printed letters on that page; and the stamped letters at the end of the incontest-

able clause are larger than the letters of that provision. These stamped words are not hidden in the policies but are placed where they can easily be seen and where they should have been discovered by the insured. Indeed, the fact that this notation had been made by means of a rubber stamp should serve to distinguish it from the printed portions of the page and to attract the attention of a reader of the policy.

■ It is settled law in South Carolina that the insured has the duty of reading the insurance policy and of acquainting himself with its contents and that failure to do so will estop him from avoiding the written contract on the grounds that he did not know its terms. Able v. Equitable Life Assur. Soc. of the United States, 186 S.C. 381, 195 S.E. 652; Dukes v. Life Ins. Co. of Virginia, 184 S.C. 500, 193 S.E. 36. By the stamped notation the insured was put on notice that the policy contained limitations on aviation risks, and being on notice, his inquiry could only lead him to the section of the policy entitled "War Clause." There was no place to find these limitations other than in this section, which occupies a whole page of the policy and which could not fail to strike the eye of even a casual reader of the contract of insurance. In that manner the stamped words served their purpose when they focused the attention of the reader to the page where the limitations as to aviation risks were to be found.

■ We do not think that the caption "War Clause" (however inept it may be) was so ambiguous as to mislead the insured and to prevent his knowing that he was not to be covered if his death occurred as a result of his operating his private plane. The lower court attempted to create such an ambiguity by considering the caption in conjunction with the stamped words on the face of the policy and thereby deciding that the caption was misleading in that the caption did not adequately describe all the matter contained in the clause. But there is no ambiguity in the operative language of this clause, and, since this language is clear, the actionable words are controlling. Resort may be had to the caption only to ex-

plain an ambiguity in the operative part of the clause, not to create an ambiguity where none exists. Wilson v. Towers, 4 Cir., 55 F.2d 199; United States v. A. Bentley & Sons Co., D.C., 293 F. 229; Peters v. McLaren, 6 Cir., 218 F. 410; Coit v. Jefferson Standard Life Ins. Co., 28 Cal.2d 1, 168 P.2d 163, 168 A.L.R. 673. Also where the recital or caption in an insurance policy is vague, but the operative part is explicit, the operative part controls. Crowell v. Gould, 68 App.D.C. 297, 96 F.2d 569; Schaffran v. Mt. Vernon-Woodberry Mills, 3 Cir., 70 F.2d 963, 94 A.L.R. 543.

■ The provisions of the section in question are sufficiently clear and unambiguous. There are four types of risks which are excluded from the coverage of the policy. Each type is set forth in a separate clause which is numbered and indented. The sentence begins with the words, "If the death of the Insured shall occur" followed by a colon and a line-spacing. Then there is an indentation and the four consecutively numbered clauses are set forth, each separated from the other by the space of a line. It seems that the purpose of this arrangement was to insure that the words "If the death of the Insured shall occur" would be read or understood before each of the numbered clauses. Thus each clause would be a limitation of the coverage of the policy, separate and distinct from the other three limitations.

■ No real ambiguity exists when clause 3, the aviation exclusion provision, is read by itself. It provides that if the death of the insured occurs as a result of operating or riding in any kind of aircraft, "except as a fare-paying passenger in a licensed passenger aircraft operated by a licensed pilot on a regularly scheduled flight * * *," then the amount payable under the policy shall be the total amount of the premiums paid. The clear and unambiguous language of the aviation exclusion clause must be given its plain meaning. Clause 3 makes no distinction between whether the insured is, or is not, a member of any armed force. Accordingly, since the insured met his death as a result of operating his private airplane in

which he was not a fare-paying passenger, his beneficiaries cannot recover the full face value of the policies

█ Counsel for the beneficiaries, also the lower court, lay great stress upon the fact that of the four numbered clauses limiting the liability of the Company, three (Numbers 1, 2 and 4) are concerned with war activities and that clause 3 alone contains no reference to war. From this fact it is concluded that clause 3 was intended to apply only to war activities and not to civilians who had no connection with the war. We cannot read such a limitation into the express words of the aviation exclusion clause. Significant in this respect is the fact that in the other three clauses limiting the liability of the Company, specific mention is made of the status of the insured in the armed services. Clause 1 applies if he is serving in the armed forces of any country, outside of the continental limits of the United States; clause 2, if he is serving within the continental limits of the United States in the air force of any country engaged in war; and clause 4, if he is a civilian outside the continental limits of the United States and death occurs "as a result of war or any act of war." Thus it seems that the omission of any reference to the military or naval status of the insured in clause 3 was done purposely in order that this clause would apply regardless of whether or not the insured was connected with the armed forces or the war.

█ Limitations as to war risks and aviation risks are often placed in the same section or clause of an insurance policy and the courts have been inclined to construe each type of limitation as if it were a separate and distinct provision. The mere circumstance that all the exclusions are placed in one sentence is not vital as long as no ambiguity is thereby created. See State ex rel. Mutual Life Ins. Co. of New York v. Shain, 344 Mo. 276, 126 S. W.2d 181; Price v. Prudential Insurance Co., 98 Fla. 1044, 124 So. 817; Taylor v. Prudential Ins. Co. of America, 142 Misc. 94, 253 N.Y.S. 55. And such juxtaposition does not call for the application of the principle of noscitur a sociis so as to limit the exclusion of aviation risks to risks connected with war.

█ Indeed, in each of the policies under consideration in the instant case is a section covering total and permanent disability benefits, and this section contains a clause entitled "Risks not assumed" which reads as follows: "No benefits shall be granted for disability resulting directly or indirectly, wholly or in part from any of the following causes, which are risks not assumed under this provision, (a) intentionally self-inflicted injury, whether sane or insane, (b) military or naval service or civilian relief work in time of war, (c) being in or on, or coming in contact with any vehicle or device used wholly or partly for aerial navigation or ascension, or falling with or from such vehicle or device, or operating or handling such vehicle or device in any manner, except travel as a fare-paying passenger in a licensed passenger aircraft while operated on a regularly published schedule between definitely established airports and piloted by a licensed passenger aircraft pilot, (d) being in or on, or coming in contact with a submarine vessel or other device for submarine descent."

The coupling of the war and aviation risks in the same exclusion clause in the total and permanent disability contract and the similarity of the language there used with the language used in the war and aviation exclusion provision of the principal contract for death are persuasive of the conclusion that it was intended thereby to exclude the same risks from both clauses of the insurance contracts.

The lower court excluded as incompetent certain evidence which, the Company alleged, tended to prove that insured understood that his death would not be covered by the policies if it resulted from piloting his own airplane. Some of the proffered evidence related to admissions and declarations concerning the clause in question, which the insured made to the agent of the Company at the time he applied for the policies. The Company contended that it could offer evidence which would show that when the insured began to fly, he made

special inquiry as to his coverage and found that the Company could not remove the aviation exclusion clause from the policies. The Company sought to introduce proof that insured then applied to another company, the Aero Underwriters, Inc., for a special policy to cover the risk of flying his own plane, but ascertained the premium rate to be prohibitive. Evidence was also offered by the Company to show that later, when the defendant Company began to insure against aeronautical risks, the insured discussed with its agent the removal of the aviation exclusion clause from the policies upon the payment of an additional premium, but that the insured again decided the rate was too high. The Company further wished to prove that the insured then said he wasn't going to get hurt flying anyway. In view of our interpretation of the insurance policies in these cases, it is unnecessary for us to pass upon the correctness of the rulings of the District Court which excluded this proffered evidence. We, accordingly, do not undertake to decide this question.

The judgments appealed from are reversed and the cases are remanded to the District Court with directions in each case to enter judgment for the defendant insurance company.

Reversed.