Otto E. KUHN and Edna R. Kuhn,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. 549-56.

United States District Court
D. New Jersey.

Jan. 3, 1958.

Frankel & Frankel, by Leopold Frankel, Paterson, N. J., for plaintiffs.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., by George J. Rossi, Asst. U. S. Atty., Newark, N. J., and George Elias, Jr., Washington, D. C., for the Government.

WORTENDYKE, District Judge.

Suing under 28 U.S.C. § 1346(a)(1), plaintiffs (husband and wife) seek to recover $7,903.86, the amount of income tax paid, for the year 1953, by the husband (herein called Kuhn) assessed on $12,250, received during the year by him under a written contract, dated May 31, 1951, with Botany Mills, Inc., a New Jersey corporation, (herein called Botany). He contends that the amount so re-

ceived should not have been included in his "gross income" for the tax year, but should have been excluded therefrom because constituting an amount "received through * * * health insurance * * *," as contemplated by 26 U.S.C. § 22(b) (5). As a second cause of action, Kuhn claims the right to a refund of $1,057.36, less $350 already received, representing portion of income tax paid in 1953 but assessed for 1952, on the sum of $2,083.34 evidenced by check of Botany as salary to Kuhn, dated December 31, 1952. The proceeds of this check were not actually received by Kuhn until January 5, 1953, it having been Botany's practice to mail Kuhn's monthly checks for services to his bank for deposit in his account. I have already directed judgment for defendant upon this second cause of action.

The case was submitted to the Court upon a written stipulation of facts for both causes of action, supplemented by the oral testimony of two physicians. Upon this medical testimony, I find as a fact that Kuhn became permanently physically disabled for the performance of the consulting services described in paragraph 2(b) of the contract hereinabove referred to. A copy of the contract was annexed to plaintiffs' trial memorandum and particularly referred to in the stipulation of facts.

The contract upon which Kuhn bases his claim recites that he had been in the employ of Botany for over 27 years and, on the date of the contract, was Vice-President of the company. The instrument further recites that Botany was desirous of having Kuhn continue in its employ in an active management capacity for the period ending December 31, 1951, and thereafter in a consulting capacity during his lifetime, and Kuhn expressed willingness to be so employed "provided he receives *reasonable compensation for his services both during such active management period and thereafter during his lifetime in a consulting capacity*." (Emphasis supplied). Accordingly the parties expressly agreed that Kuhn was to be employed in an active

management capacity "similar to that in which he served the corporation during the past year," until December 31, 1951, at an annual salary of $35,000, payable in equal monthly installments, "and such contingent incentive compensation as may be determined in accordance with the existing plan therefor." Botany further agreed to employ Kuhn after December 31, 1951, and continuously during his lifetime, in a consulting capacity, "at an annual salary of $25,000." payable in similar installments. By further terms of the agreement, Kuhn undertook to be available "at all reasonable and proper times" for consulting purposes. He also agreed to abstain from competing in any way with the business of Botany. It was further provided that Botany might discontinue the monthly installments if Kuhn "failed reasonably to perform services as consultant" and if Kuhn should in any way be engaged in an activity competitive with Botany's business. The contract then continued, in part, as follows:

"* * * provided, however, that *such payments* shall nevertheless be continued during the lifetime of Kuhn but at the reduced rate of $15,000 per annum, if Kuhn is unable to perform the services set forth in (a) above (as consultant) because of permanent ailment and incapacity, if such permanent condition is attested by competent medical evidence submitted to the Corporation." (Emphasis supplied.)

Contending that the contract provisions for payment of $15,000 a year to Kuhn for life, from and after his becoming permanently ill and incapacitated, constitutes a provision of "accident or health insurance" as contemplated by the language of 26 U.S.C. § 22(b) (5), Kuhn seeks recovery of so much of the income tax paid for the year 1953 as was based upon his receipt of monthly payments at the rate of $15,000 per annum under the terms of the existing contract during that tax year. In support of this contention, Kuhn relies upon Haynes v. United States, 1957, 353 U.S. 81, 77 S.Ct.

649, 1 L.Ed.2d 671; and Epmeier v. United States, 7 Cir., 1952, 199 F.2d 508, approved in Haynes. This Court finds the facts in the case at bar clearly distinguishable from those in the cases relied upon by the plaintiffs and concludes, therefore, that defendant should have judgment upon the first count of the complaint.

■ The principle is well recognized that " 'exemptions from taxation are not to be enlarged by implication if doubts are nicely balanced.' " United States v. Stewart, 1940, 311 U.S. 60, 71, 61 S.Ct. 102, 109, 85 L.Ed. 40, quoting from Trotter v. State of Tennessee, 290 U.S. 354, at page 356, 54 S.Ct. 138, 78 L.Ed. 358. "It is likewise true that Congress will be presumed to have used a word in its usual and well-settled sense." Stewart, supra, 311 U.S. at page 63, 61 S.Ct. at page 105, Cf., Waller v. United States, 1950, 86 U.S.App.D.C. 93, 180 F.2d 194.

In Haynes, supra, [353 U.S. 81, 77 S. Ct. 650], plaintiff's employer had established a plan of health insurance for *all* of its employees over a quarter of a century before Haynes became disabled. Such an insurance plan prevailed throughout the Bell Telephone System, of which his employer was a part. A copy of the plan, prepared in a form much like that of an insurance policy, was given by the employer to every person upon the commencement of his employment. The plan provided for the payment of definite amounts to all employees when disabled by accident or sickness. These payments were referred to as "sickness disability benefits" but their amount and the duration of the period during which they were to be paid varied with the length of employment service of the recipient. The Supreme Court defined health insurance as "an undertaking by one person for reasons satisfactory to him to indemnify another for losses caused by illness." Tested by this definition the facts in Haynes clearly disclose the existence of a plan of health insurance calling for payment of definite amounts to employees during disability resulting from accident or sickness. These payments, therefore, constituted "amounts received through accident or health insurance" which, by the terms of 26 U.S.C. § 22(b) (5) were excludable from the recipient's gross income.

The facts in Epmeier, supra, are generally similar to those in Haynes. In the former case, the employer, at the time the taxpayer commenced his employment, had in effect a life and health insurance plan for its employees, by the terms of which the right to benefits therefrom commenced with the commencement of the employment. The accrual of the right to become a beneficiary of the plan in Epmeier was conditioned upon satisfactory passing of a medical examination and it was provided that benefits under the plan were not to apply to recipients of Workmen's Compensation payments, except to the extent of the difference between the compensation payment and the amount of benefit to which the employee would otherwise be entitled under the plan. The employer reserved to itself the right to cancel payments if the employee did not fully cooperate with his employer respecting the employee's obligations under the plan. Epmeier also enunciated a definition of insurance as "a contract, whereby, for an adequate consideration, one party undertakes to indemnify another against loss arising from certain specified contingencies or perils." [199 F.2d 509.]

Despite the comprehensiveness of the definitions enunciated in the two cases relied upon, it must be recognized that the Court's conclusion necessarily rested upon the factual foundation presented in each case. This Court feels that the facts in the case at bar not only fail to bring this contractual arrangement into coincidence with either of the definitions, but clearly differentiate the situation here presented from that disclosed in Haynes and in Epmeier.

■ In seeking to discover the intention of the parties with respect to the contract here under consideration, we are relegated exclusively to the language of the agreement, including the recitals,

since no testimony was adduced either by Kuhn or by Mr. Johnson, the President of Botany, who executed the contract in its behalf, regarding the purpose and object of the agreement as recognized by the contracting parties. As plaintiff, Kuhn not only has the burden of proving material facts within his knowledge, but of producing witnesses familiar with facts relating to the intention of the parties to this contract. Kuhn's failure to adduce testimony entitles this Court, sitting without a jury, to infer that both his testimony and that of any witness, if introduced, would have been adverse to his interest. Meier v. Commissioner of Internal Revenue, 8 Cir., 1952, 199 F.2d 392; United States Hoffman M. Corp. v. Valeteria Cleaners, D.C.Minn.1956, 143 F.Supp. 797; Burch v. Reading Co., D.C. E.D.Pa.1956, 140 F.Supp. 136, affirmed 3 Cir., 1957, 240 F.2d 574; Regan v. Lenkowsky, D.C.N.J.1956, 137 F.Supp. 133; Lone Star Cement Corp. v. Palmer, 1941, 129 N.J.Eq. 214, 18 A.2d 711.

Recitals in a contract are much like the scenery in a play. They form a background against which the intentions of the parties may be more clearly understood. Sometimes the recitals disclose a history of prior transactions between the parties. In other instances, and it is believed that such is the case here, the recitals may perform the function of a footnote to express the intention and purpose underlying the inter-party undertakings. As was pointed out in Schaffran v. Mt. Vernon-Woodberry Mills, Inc., 3 Cir., 1934, 70 F.2d 963, 965, 94 A.L.R. 543, quoting from Wilson v. Towers, 4 Cir., 55 F.2d 199, 200, it is the general rule that: " 'If the recitals (in a contract) are clear and the operative part is ambiguous, the recitals govern the construction. If the recitals are ambiguous, and the operative part is clear, the operative part must prevail.' " Keeping in mind that the contract which we are seeking to interpret was not entered into at the commencement of Kuhn's employment by Botany, but that he had been an employee of Botany for over 27 years and was then Vice-President of the Company, we may discern from the second recital the intentions of each of the respective contracting parties. On the one hand it is stated that Botany desired that Kuhn continue in active management capacity until December 31, 1951, and that he serve in a consulting capacity thereafter during his lifetime. Kuhn, in turn, expresses his willingness to be employed as desired by Botany provided he receives "reasonable compensation for his services," both during the active management period and thereafter for his lifetime in a consulting capacity. It will thus be noted that there is no suggestion or indication in these recitals of any plan or agreement under which the employer would provide or the employee would become entitled to receive accident or health insurance coverage. Turning now to the "operative" paragraphs of the agreement we find the undertaking of the employer to pay the employee, at the rate of $35,000 per annum until December 31, 1951, for services similar to those previously rendered by the employee, and after that date, to pay the employee at a reduced rate of $25,000 per annum for services "in a consulting capacity." With respect to the "consulting" services which Kuhn was called upon to render, he undertook to be available at reasonable times for consultation purposes, provided, however, that he should not be required to render such consulting services on more than 100 days in any calendar year. Thus, as consultant he was upon an annual retainer payable in monthly installments, subject to the limit of 100 days per annum. For the company's protection, Kuhn agreed to abstain from competing with the company's business and, as already pointed out, the right was reserved to the company to discontinue monthly payments on account of the annual salary rate if Kuhn failed to perform his services reasonably or in any way competed with the company's business.

There follows then the proviso which Kuhn would have us construe as constituting health insurance. Paragraph 2 (b) of the "operative" provisions of the contract contains the proviso hereinabove quoted, respecting the continuation of

payments. Significant in the language of this proviso are the words "such payments" and "continued." The payments referred to are obviously the monthly payments of salary which Botany agrees to pay to Kuhn for consulting services. The hereinabove referred to clause provides that these monthly payments for services shall be continued during Kuhn's lifetime "but at the reduced rate of $15,000 per annum" if Kuhn becomes unable by reason of disability due to illness to perform the consulting services for which he would otherwise be entitled to receive salary at a higher rate ($25,000 per annum). Finally, the critical clause requires that the accrual of the condition of permanent disability must be attested by competent medical evidence. The existence of such disability is amply disclosed by the oral testimony of Doctors Stoltz and Ewing, presented on the trial. That evidence disclosed that Kuhn had been under treatment by Dr. Stoltz for coronary insufficiency since 1949. This diagnosis was confirmed by Dr. Ewing, who, on December 30, 1949 found Kuhn suffering from severe coronary insufficiency, with critical possibilities. The patient was then, in the opinion of Dr. Ewing, definitely disabled and required bed rest. He received periodic treatments extending through April, 1954. As of January 1, 1953, Dr. Ewing reached a final diagnosis of permanent disability:

The foregoing analysis of the contract reviewed discloses that (1) it was not part of a previously established plan by Botany for its employees generally; (2) it was not entered into at the inception of the employer-employee relationship between Botany and Kuhn; (3) there was no oral testimony or resolution of the Board of Directors of Botany from which the purpose or intention of the contracting parties might be ascertained; (4) the payments provided for to follow the accrual of permanent disability were not to be drawn from any special or otherwise segregated fund; (5) there is no evidence that Botany was authorized to make insurance contracts; (6) no consideration in the form of premium payment, salary deduction or prospective services to be rendered moved from Kuhn to Botany to support the claimed insurance; and (7) the payments required to be made following the accrual of permanent disability were still salary payments but at a reduced rate, by reason of the inability of the employee to serve for the required 100 days per year in a consulting capacity. If it be argued that the consideration supporting Botany's agreement to pay Kuhn $15,000. after accrual of his permanent disability is to be found in his past services, the effect is to provide a pension rather than insurance. Cf., Turner v. United States, 8 Cir., 1956, 237 F.2d 700, 702; Anderson v. United States, 9 Cir., 1953, 205 F.2d 326, 328, 40 A.L.R.2d 639.

In adopting the language of the Act of which Kuhn seeks to avail himself in this litigation, Congress must be presumed to have used the words "health insurance" in their usual and well-settled sense. United States v. Stewart, supra, citing Old Colony R. Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484; Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416. I cannot reasonably construe the contract in this case as one for health insurance or as coincident with the definitions in Haynes or in Epmeier, despite Branham v. United States, 6 Cir., 1957, 245 F.2d 235, which reversed D.C., 136 F.Supp. 342 upon the authority of Haynes. I, therefore, cannot enlarge the meaning of the agreement by implication since my doubts are at best "nicely balanced."

I am, therefore, compelled to the conclusion that the payments received by Kuhn, upon which he seeks a refund of income taxes paid, were salary or possibly retirement pension payments, and not "amounts received through accident or health insurance." Therefore, judgment should be entered in favor of the defendant in this case.

The foregoing shall constitute my findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C., and an order may be presented in conformity with the views hereinabove expressed.