HARRY COHEN AND EDITH COHEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 94947.    Filed November 14, 1963.

Harry Cohen, pro se.
*Rudolph J. Korbel,* for the respondent.

184

OPINION

The issue presented relates to the amount which the petitioner Edith Cohen may exclude from gross income as constituting wages or payments in lieu of wages for periods during which she was absent from work on account of personal injuries or sickness within the provisions of section 105 of the Internal Revenue Code of 1954.[5]

On brief the petitioner contends that the total amounts received by her from the board of education for the period from April 14, 1959, to December 31, 1959, including that for the summer vacation period, constituted wages or payments in lieu of wages for a period during which she was absent from work on account of personal injuries or sickness within the meaning of the statute, and that taking into account the statutory limitation of $100 per week, she is entitled to an exclusion from gross income of $3,709.33, which is slightly less than the amount claimed in the return. While she concedes that normally she, and other teachers, are not called upon to work during the summer vacation period, it is her contention that she was in reality paid for being available for work during such period and that therefore when she was ill during that period, and would therefore have been unable to respond to any call for service, it must be considered that she was "absent from work on account of personal injuries or sickness" within the meaning of the statute. The petitioner points to the fact that she is paid a yearly compensation in 12 monthly in-

---

[5] Section 105 provides in pertinent part as follows:

(a) AMOUNTS ATTRIBUTABLE TO EMPLOYER CONTRIBUTIONS.—Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer.

\* \* \* \* \* \* \*

(d) WAGE CONTINUATION PLANS.—Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. In the case of a period during which the employee is absent from work on account of sickness, the preceding sentence shall not apply to amounts attributable to the first 7 calendar days in such period unless the employee is hospitalized on account of sickness for at least one day during such period. If such amounts are not paid on the basis of a weekly pay period, the Secretary or his delegate shall by regulations prescribe the method of determining the weekly rate at which such amounts are paid.

(e) ACCIDENT AND HEALTH PLANS.—For purposes of this section and section 104—
    (1) amounts received under an accident or health plan for employees, and
    (2) amounts received from a sickness and disability fund for employees maintained under the law of a State, a Territory, or the District of Columbia,
shall be treated as amounts received through accident or health insurance.

stallments.[6] She also points to the fact that whereas New York teachers, outside of New York City, are employed for a 10-month period and that provision is made for extra pay if they are called upon to work during the summer vacation period, New York City teachers are employed for the full year, and states that the board of education had authority to require summer work without additional compensation.

The respondent, on the other hand, contends that the petitioner was not absent from work on account of injury or sickness within the meaning of the statute during the period July 1 through September 14, 1959, because this period was her normal vacation period and she was neither at work nor expected to be at work during this period. He contends that the issue here presented has been decided by this Court in *Edward I. Weinroth*, 33 T.C. 58.[7] The petitioner contends that the decision in the *Weinroth* case is not conclusive for the reason, among others, that in the presentation of that case there was not brought out the fact that under the bylaws of the board of education the right to definite holidays and vacations is subject to the discretion of the board and that such vacations and holidays could be altered at will without any change in the annual salary.

There are set forth in the margin pertinent provisions of the Income Tax Regulations promulgated under section 105(d) of the

---

[6] The petitioner introduced in evidence an opinion of the State comptroller relating to municipal government, dated June 2, 1953, stating in part as follows:

"We note that you express doubt as to the constitutionality of a plan (see New York State Constitution, article VIII, § 1) whereby a teacher, paid on a twelve months' basis, receives a month's salary at the end of July and at the end of August, although he renders no actual services to the district until September. While it is true that no salary payment may be made in advance of rendition of services, a teacher employed as of July first is actually in the employ of the district on a 'paid vacation' status and is theoretically subject to call throughout the summer. * * *"

She also introduced a decision of the commissioner of the New York State Education Department, In the Matter of Appeal of Abraham Lederman, dated December 26, 1951, stating in part as follows:

"The board of education of New York City pays teachers on a twelve month basis. This is in accordance with the provisions of section 3015 of the Education Law. A teacher is employed the year round (Matter of O'Haire, 24 State Dept. Rep. 706) and is entitled to receive one-twelfth salary for each month of service starting with the day the appointment is effective.

"A teacher is employed during July and August the same as during any other month of the year. The board on its part is entitled to service during this period also. This has been the law ever since the teachers in New York City changed from a contract in which the term of the contract was stated to tenure wherein the teacher serves continuously."

[7] The *Weinroth* case involved a New York City school teacher who excluded from his gross income as sick pay an amount received for a portion of his summer vacation period during which he was incapacitated and hospitalized. Prior to such hospitalization, but within the summer vacation period, he had begun to perform tasks requested of him by the principal of the school at which he taught, but had to terminate such tasks because of illness. We held that the taxpayer did not qualify for a sick pay exclusion under sec. 105(d) because he could not be "absent from work" in a period which was not a working period for him, having concluded that when the taxpayer performed the tasks requested by his principal he was a volunteer doing "work" which he was not required to do, without extra compensation, during the time normally set aside for his vacation.

Code.[8]  It is to be noted that the regulations provide that section 105(d) applies only to amounts attributable to periods during which the employee would be at work were it not for a personal injury or sickness.  The regulations also provide that the amount which is paid to an employee as wages or payments in lieu of wages for a period of absence from work due to a personal injury or sickness shall be determined by reference to the plan under which the amount is paid and to the contract, statute, or regulation which provides the terms of employment.

The bylaws of the board of education provide that a teacher's absence from duty due to personal illness may be excused with pay for 10 school days per school year, and that sick leave, if unused, shall be cumulative and available for future use up to a maximum of 200

---

[8] Section 1.105-4 of the regulations provides in part as follows:

(a) *In general.* * * *

(2) (i) * * *.

(ii) Section 105(d) is applicable if, and only if, the employee is absent from work and such absence is due to a personal injury or sickness. Thus, if an employer has a plan for continuing the wages of employees when they are absent from work, regardless of the cause of the absence from work, section 105(d) is applicable to any payments made under this plan to an employee whose absence from work is in fact due to a personal injury or sickness. On the other hand, although the terms of a plan provide that benefits are to be continued only as long as the employee is absent from work on account of a personal injury or sickness, section 105(d) does not apply to payments made to an employee for a period of absence from work where such absence is not in fact due to a personal injury or sickness.

(3) (i) Section 105(d) applies only to amounts attributable to periods during which the employee would be at work were it not for a personal injury or sickness. * * *

(ii) Similarly, an employee who incurs a personal injury or sickness during his paid vacation is not allowed to exclude under section 105(d) any of the vacation pay which he receives, since he is not absent from work on account of the personal injury or sickness. Likewise, a teacher who becomes sick during the summer or other vacation period when he is not expected to teach, is not entitled to any exclusion under section 105(d) for the summer or vacation period. However, if an employee who would otherwise be at work during a particular period is absent from work and his absence is in fact due to a personal injury or sickness, a payment which he receives for such period under a wage continuation plan is subject to section 105(d).

(4) A period of absence from work shall commence the moment the employee first becomes absent from work and shall end the moment the employee first returns to work. However, the exclusion provided under section 105(d) is applicable only to payments attributable to a period of absence from work which is due to a personal injury or sickness, and to payments attributable to a period when the employee would have been at work but for such personal injury or sickness.

(5) For the purpose of section 105(d), whether an employee is absent from work depends upon all the circumstances. For example, an employee, who is a farmhand and who lives upon the premises of his employer, is absent from work when he is unable to work even though he remains on the premises of his employer. A member of the Armed Forces, who on a particular day has no assigned duties but to stand ready for duty, is absent from work if he is unable to answer any duty call that may be made upon him. * * *

(b) *Determination of amount attributable to period of absence.* The amount which is paid to an employee as wages or payments in lieu of wages for a period of absence from work due to personal injury or sickness shall be determined by reference to the plan under which the amount is paid, and to the contract, statute, or regulation which provides the terms of the employment. However, unless the plan, contract, statute, or regulation provides otherwise, it will be presumed that no wages or plan benefits are attributable to days (or portions of days) which are not normal working days for the particular employee. * * *

days. Such bylaws also specifically provide for paid vacations for the interval between June 30 and the second Monday in September and the interval between Christmas and January 1. Although, as contended by the petitioner, she was paid a salary on an annual basis (one check for each of the 12 months), and even though it be assumed, as she contends, that the board of education had the authority to require her to work in the summer months if it so desired, the fact is that the board had not taken any action to require her to work during such period. She was not charged with sick leave for any days during the summer and Christmas vacation periods. It seems clear, therefore, that under the board of education plan, payments received for these vacation periods in reality constituted vacation pay and not "sick pay." The petitioner's absence from work during the summer vacation period and during the Christmas period was not due to the fact that she was ill, but was due to the fact that the board of education had not required her to work during such periods.

The petitioner points to that portion of the Income Tax Regulations which states that a member of the Armed Forces, who on a particular day has no assigned duties but to stand ready for duty, is absent from work, for the purpose of section 105(d), if he is unable to answer any duty call that may be made upon him, and claims that the same principle applies in her case. We think not. During the summer vacation period and the Christmas vacation period the petitioner was not required to stand ready for duty within the contemplation of the regulations as in the case of a member of the Armed Forces.

The petitioner also points to the portion of the regulations which provides that a period of absence from work shall commence the moment the employee first becomes absent from work and shall end the moment the employee first returns to work, and claims she falls within this provision because in her case the period commenced April 14, 1959, and extended throughout the remainder of the calendar year. She contends that the portion of the regulations precluding any exclusion for the summer or other vacation period applies only in the case of a teacher who *becomes* sick during the summer or other vacation period, whereas she became sick before the summer period commenced. She claims that this provides a distinction between her case and the *Weinroth* case, where the illness commenced during the summer vacation period. We cannot accept this view. The cited portion of the regulations is followed immediately by the statement that "the exclusion provided under section 105(d) is applicable only * * * to payments attributable to a period when the employee would have been at work but for such personal injury or sickness." The substance of our holding in the *Weinroth* case was that the taxpayer's absence from work was not due to sickness or injury, but, rather, to the fact that the

period in question was not a working period for him. The same reasoning is applicable in the instant case.[9]

It is our conclusion that it cannot be considered that there is included within "wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness" any amounts received by the petitioner in 1959 for the summer vacation comprised of the months of July and August and that portion of the month of September prior to September 11 (the day she would have had to report for work had she not been ill), or for the Christmas vacation period. Such amounts constitute vacation pay rather than sick pay.

The question is also presented whether the respondent erred in holding that sick pay does not include any amount of wages or payments in lieu of wages received for legal holidays. The respondent recently issued Rev. Rul. 63–219, 1963–1 C.B., in which he interpreted the regulations as permitting the exclusion of amounts received for a legal holiday [10] if the employee is in fact absent from work on account of personal injury or sickness on the normal working day immediately preceding the legal holiday and continues to be so absent on the normal working day following the legal holiday. This ruling, by its terms, is of general application and its retroactive effect is not limited. Since the ruling is of general application, we think it must be considered that it has the effect of a concession in the instant case that any wages or payments in lieu of wages received by the petitioner for any legal holidays during the normal working period that she was absent constitutes sick pay. It should be pointed out, however, that under such revenue ruling any amount received by the petitioner for Christmas Day is not to be considered as sick pay, since she was not absent on account of sickness on the first normal working day thereafter.

In her return the petitioner stated the amount of $5,884.28 as being the amount of her sick pay. This figure, in our view, is clearly erroneous in that it includes pay received for the summer vacation period and also apparently that received for the Christmas vacation period. The respondent in the notice of deficiency did not set forth any amount as representing sick pay, but merely set forth an amount representing the excludable portion thereof. The amount of sick pay will be computed in connection with the recomputation under Rule 50.

---

[9] It should be pointed out that we do not have presented here one of the questions presented in the *Weinroth* case, namely, whether the petitioner had been assigned any duties by her employer during the vacation period.

[10] Rev. Rul. 63–219 does not hold that the same principle applies with respect to amounts of wages received for vacation periods, such as summer vacation and Christmas vacation. Cf. Rev. Rul. 57–359, C.B. 94, 1957–2 (which was not modified by Rev. Rul. 63–219), in which the respondent took the position that excludable sick pay of a teacher does not include any amount of pay received for any period or portion thereof which is a part of the summer vacation, the Christmas or Easter holidays, or any other vacation period during which the employee is not expected to work.

190

There remains for consideration the manner of computing the portion of the petitioner's sick pay which is excludable from gross income. Section 105(d) provides that amounts received as wages or in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness are not excludable from gross income to the extent that such amounts exceed a weekly rate of $100. The statute further provides that if such amounts are not paid on the basis of a weekly pay period, the Secretary or his delegate shall by regulations prescribe the method of determining the weekly rate at which such amounts are paid. In the regulations [11] the respondent has provided that if benefits are paid on the basis of a monthly pay period, the weekly rate at which such benefits are paid shall be the monthly rate multiplied by 12 and divided by 52. Such regulations further provide that if the weekly rate so determined exceeds $100, the excludable portion of the amount received shall bear the same ratio to such amount as $100 bears to the weekly rate.

The petitioner takes the position that her sick pay is paid on the basis of a monthly pay period. The respondent on the other hand, in effect, takes the position that neither the petitioner's wages nor plan benefits are paid for any certain period. He states that her annual salary is paid for the actual number of working days in the school year.[12] In the notice of deficiency he calculated that the petitioner had excludable sick pay of $2,440, by multiplying the 122 working days during which she was absent during 1959 by $20 per day.

---

[11] Sec. 1.105–4(d)(3) provides in pertinent part as follows :

(3) *Determination of weekly rate at which amounts are paid under a wage continuation plan.* (i) For purposes of this subparagraph the pay period of a particular wage continuation plan shall be determined by reference to such plan. If, in the usual operation of the plan, benefits are paid for the same periods as regular wages, then the pay period of such benefits shall be the period for which a payment of wages is ordinarily made to the employee by the employer. If plan benefits are ordinarily paid for different periods than regular wages, then the pay period of such benefits shall be the period for which payment of such benefits is ordinarily made.

(ii) The weekly rate shall be determined in accordance with the following rules :

\* \* \* \* \* \* \*

(d) *Monthly pay period.* If benefits are paid on the basis of a monthly pay period, the weekly rate at which such benefits are paid shall be the monthly rate multiplied by 12 and divided by 52.

\* \* \* \* \* \* \*

(iii) \* \* \* If the weekly rate for purposes of section 105(d) (as determined in subdivision (ii) of this subparagraph) exceeds $100, the amount received which is not attributable to the 7-day waiting period provided in paragraph (c) of this section is only partially excludable. The excludable portion of such amount shall bear the same ratio to such amount as $100 bears to the weekly rate for purposes of section 105(d). \* \* \*

[12] He refers to Rev. Rul. 57–360, 1957–2 C.B. 97, wherein the position was taken that, under the circumstances there set forth, a taxpayer was not paid benefits for any stated period, but merely for the number of working days in the school year. Irrespective of whether such ruling was correct on its assumed facts, it is sufficient to state that a different situation is presented in the instant case. In that ruling it was stated that the school board considered the annual salary as being paid for 180 working days for all computation purposes, and that this indicated that all the annual salary was attributable

We think it clear that the petitioner's sick pay benefits were paid on the basis of a monthly pay period. She, like other New York City school teachers, received one payment for each month. Under the plan of the board of education monthly compensation was not diminished if, as was true in the case of the petitioner, enough days of sick leave had been accumulated to cover the days of absence from work on account of sickness in a particular month. Had the petitioner not had enough days of accumulated sick leave to cover the number of working days absent in any particular month she would still have been paid on the basis of a monthly pay period, but one twenty-fifth of a month's salary would have been deducted from the monthly salary for each day of unexcused absence. Therefore, the computation of the weekly rate of the petitioner's sick pay should be made in accordance with the regulations relating to a monthly pay period. Upon the evidence before us, the weekly rate of payments was $153.54 (the year's salary of $7,984.27 divided by 52). The fraction to be applied to the sick pay actually received, in order to determine the excludable portion thereof, is one having a numerator of $100 and a denominator of $153.54.

The computation of the correct amount of excludable sick pay, as well as the proper amount of the medical expense deduction, will be made in connection with the recomputation under Rule 50.

*Decision will be entered under Rule 50.*

---

to working days only. Here it seems clear that the board of education did not consider that it was paying the petitioner for only the actual working days during the year. Thus, the bylaws of such board provide that in the case of a day's unexcused absence a deduction of 1/25th of the monthly salary is made, whereas there are, at most, 23 working days in any 1 month. It may be added that in this respect the facts here resemble more closely those set forth in Rev. Rul. 57–359, 1957–2 C.B. 94, involving a teacher whose salary was computed on a 30-day per month basis. Therein it was considered that the teacher received pay on the basis of a monthly pay period.