HAYNES ET UX. *v.* UNITED STATES.

No. 257.   Argued March 5, 1957.—Decided April 1, 1957.

*John H. Hudson* argued the cause for petitioners.   With him on the brief was *William R. Hudson.*

*Hilbert P. Zarky* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Rice* and *Marvin W. Weinstein.*

*Brady O. Bryson* and *Thomas V. Lefevre* filed a brief for Oliva, as *amicus curiae,* urging reversal.

MR. JUSTICE BLACK delivered the opinion of the Court.

In 1949, the petitioner, Gordon P. Haynes, became sick and unable to work while employed by the Southern Bell Telephone and Telegraph Company. At that time the company had in effect a comprehensive "Plan for Employees' Pensions, Disability Benefits and Death Benefits." This plan had been in force since 1913 when it was adopted by Southern Bell and other companies in the American Telephone and Telegraph Company system. A written copy of the plan, which was prepared much like an insurance policy, was given every person upon his initial employment by the company. Among other things, the plan provided that Southern Bell "undertakes in accordance with these Regulations, to provide for the payment of definite amounts to its employees when they are disabled by accident or sickness." Under the plan every employee was entitled, after two years' service with Southern Bell, to receive "sickness disability benefits" when he missed work because of illness. These payments began on the eighth calendar day of absence due to illness. The amount and duration of payments were set out with specificity and varied with the length of service. For example, employees who had worked for Southern Bell from two to five years were entitled to full pay for four weeks and one-half pay for nine additional weeks; employees who had been with the company for more than twenty-five years were entitled to full pay for fifty-two weeks. The company reserved the right to change or terminate the plan but agreed that no changes would be made which affected "the rights of any employee, without his consent, to any benefit or pension to which he may have previously become entitled hereunder."

Under the plan petitioner was paid $2,100 in sickness disability benefits during 1949. Since he had been an employee of the company for more than twenty-five years

this was the full equivalent of what he would have received had he been working. The Government collected $318.44 income tax on petitioner's sickness benefits. He brought this action for a refund contending that these receipts were not taxable because of § 22 (b)(5) of the 1939 Internal Revenue Code which exempted from taxable income "amounts received, through accident or health insurance . . . as compensation for personal injuries or sickness."[1] The District Court held that the payments received by petitioner on account of sickness were not taxable and directed a refund. The Court of Appeals reversed, accepting the Government's contention that Southern Bell's plan was not "health insurance" but a "wage continuation plan." 233 F. 2d 413. In *Epmeier* v. *United States,* 199 F. 2d 508, the Seventh Circuit held that disability payments under a plan similar to Southern Bell's were not taxable. Because of this conflict we granted certiorari, 352 U. S. 820.

The crucial question is whether the Southern Bell plan should be treated as "health insurance" within the meaning of § 22 (b)(5). Broadly speaking, health insurance is an undertaking by one person for reasons satisfactory to him to indemnify another for losses caused by illness. We believe that the Southern Bell disability plan comes within this meaning of health insurance.

If Southern Bell had purchased from a commercial insurance company health insurance that provided its employees with precisely the same kind of protection promised under its own plan, the Government concedes that the payments received by ailing employees from the commercial company would not have been taxable. Nevertheless it argues that Southern Bell's plan should not be treated as "health insurance" because the employ-

---

[1] 26 U. S. C. (1952 ed.) § 22 (b)(5).

ees paid no fixed periodic premiums, there was no definite fund created to assure payment of the disability benefits, and the amount and duration of the benefits varied ˙with the length of service.[2] We do not believe that these facts remove the plan from the general category of health insurance. The payment of premiums in a fixed amount at regular intervals is not a necessary element of insurance. Similarly there is no necessity for a definite fund set aside to meet the insurer's obligations. And the fact that the amount and duration of benefits increased with the length of time that an employee worked for Southern Bell reflected the added value to the company of extra years of experience and service. Apparently the Government relies on these facts primarily to show that Southern Bell's plan did not contain features which would be present in the normal commercial insurance contract. The Government, however, offers no persuasive reason why the term "health insurance" in § 22 (b)(5) should be limited to the particular forms of insurance conventionally made available by commercial companies. Certainly there is nothing in the language of § 22 (b)(5) which compels this limitation.

There is no support in the legislative history for the Government's argument that Congress intended to restrict the exemption provided in § 22 (b)(5) to "conventional modes of insurance" and not to include employer disability plans. For reasons deemed satisfactory, Congress, since 1918, has chosen not to tax receipts from health and accident insurance contracts.[3] The language

---

[2] The Government points to several other aspects of the Southern Bell plan as demonstrating that it is not "health insurance." After consideration of the Government's contentions in this respect we find they are without merit.

[3] In *Epmeier* v. *United States,* 199 F. 2d 508, 511, the Seventh Circuit was of the opinion that: "The provisions of Section 22 (b)(5)

of § 22 (b) (5) appeared in the Revenue Act of 1918 and has reappeared without relevant change in all succeeding revenue acts up to 1954.[4] The term "health insurance" was not defined in any of these acts or in any of the committee reports. There has been no uniform administrative practice which can be drawn upon to support the narrow meaning of § 22 (b) (5) now urged by the Government. Administrative rulings since 1918 appear to have regularly vacillated between holding receipts under company disability plans taxable and holding that they are not taxable.[5] Under these circumstances we see no reason why the term "health insurance" in § 22 (b) (5) should not be given its broad general meaning. See *Helvering* v. *Le Gierse,* 312 U. S. 531.

---

undoubtedly were intended to relieve a taxpayer who has the misfortune to become ill or injured, of the necessity of paying income tax upon insurance benefits received to combat the ravages of disease or accident."

[4] Section 22 (b) (5) can be traced to § 213 (b) (6) of the Revenue Act of 1918, 40 Stat. 1066. In §§ 104, 105 and 106 of the 1954 Internal Revenue Code, 26 U. S. C. (Supp. III) §§ 104–106, Congress again exempted amounts received through health insurance. However these new provisions limited the exclusion for receipts similar to those involved here to a maximum of $100 per week. We do not accept the Government's contention that the enactment of §§ 104–106 shows that Congress in 1918, and in succeeding revenue measures, intended to distinguish between conventional commercial insurance and an employer's plan like that of Southern Bell's.

[5] T. D. 2747, 20 Treas. Dec. Int. Rev. 457 (1918); G. C. M. 23511, Cum. Bull. 86 (1943); I. T. 4000, 1 Cum. Bull. 21 (1950); I. T. 4015, 1 Cum. Bull. 23 (1950); I. T. 4107, 2 Cum. Bull. 73 (1952); Rev. Rul. 208, 1953–2 Cum. Bull. 102. For a discussion of the difficulties of the American Telephone and Telegraph Company's system because of the shifting administrative practice see Hearings before House Committee on Ways and Means on Forty Topics Pertaining to the General Revision of the Internal Revenue Code, 83d Cong., 1st Sess. 363.

The judgment of the Court of Appeals is reversed and the judgment of the District Court which held that petitioner was entitled to a refund is affirmed.

*It is so ordered.*

MR. JUSTICE BURTON and MR. JUSTICE HARLAN dissent for the reasons stated in the opinion of the Court of Appeals, 233 F. 2d 413. See also, *Moholy* v. *United States,* 235 F. 2d 562; I. R. C., 1954, §§ 104–106, and the accompanying report, H. R. Rep. No. 1337, 83d Cong., 2d Sess. 15, A32–A35.

MR. JUSTICE WHITTAKER took no part in the consideration or decision of this case.