*Decision will be entered under Rule 50.*

CHARLES J. JACKSON AND GENEVIEVE C. JACKSON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56249. Filed April 15, 1957.

*Samuel B. Sterrett, Esq.,* for the respondent.

OPINION.

RAUM, *Judge:* Respondent has determined a deficiency in the income tax of the petitioners for the calendar year 1952 in the amount of $425. The sole issue is whether respondent erred in determining that amounts received by one of the petitioners upon his retirement for permanent and total disability were not received through health insurance within the meaning of section 22 (b) (5), Internal Revenue Code of 1939.

All of the facts have been stipulated and are so found.

Petitioners are husband and wife residing in Long Island City, New York. Their joint individual income tax return for the calendar year 1952 was filed on March 16, 1953, with the director of internal revenue at Brooklyn, New York. Genevieve C. Jackson is a party to

this proceeding solely because a joint return was filed, and Charles J. Jackson will be referred to hereinafter as the petitioner.

Petitioner was employed by the New York Life Insurance Company (hereinafter called the company) from September 21, 1908, to December 15, 1950. During his term of employment the company created a retirement and death benefit plan covering various employees, including petitioner. This plan provided for death benefit payments to certain beneficiaries upon the death of employees while in the active employ of the company. It also provided for retirement of employees by reason of age and by reason of total and permanent disability. The plan was set forth in a written instrument, and petitioner received a copy thereof.

The plan states that the company "as Insurer, hereby agrees with itself as employer" to pay premiums required for the coverage provided therein. The substantive provisions of the plan are headed "Retirement Plan," and commence with the statement that its purposes are "the efficient and economical administration of the business of the Company" and "inducing permanency of employment, and for the further promotion of loyalty and efficiency among the salaried employees." Thereafter the provisions of the plan are set forth in sections numbered one through eight in Roman numerals. Sections I, II, III, and VII do not contain provisions of sufficient concern to this proceeding to warrant further discussion here.

Section IV governs retirement for old age. Employees with at least 15 years of continuous service who are 65 years of age may retire at their own discretion or at that of the company. Employees 70 years of age are to be retired involuntarily. Upon retirement such employees are to receive retirement payments for the remainder of their lives. The amount of such payments is determined by a formula based solely upon the length of service and prior salary of the retiring employee, subject to an over-all ceiling on annual payments. The precise amount payable to a given employee with a given tenure and prior salary will vary depending upon his classification in group A or group B, based upon distinctions not material to this proceeding.

Section V governs retirement for total and permanent disability. An employee so disabled after at least 15 years of continuous service is to be "retired from active service" and paid during the continuance of his disability "an annual retirement income based upon the employee's average annual salary for the 5 years of service immediately preceding the date of transfer to the retirement list." The same formula is used as in the case of retirement for old age, with the same ceiling and distinction between group A and group B.

The amount payable to an employee retired for disability may not be changed because of attainment of the age for old age retirement.

Also, if such employee recovers sufficiently to resume active service, he may be removed from retirement, in which case the period of disability is deemed a leave of absence and not a break in continuity of active service. Amounts payable to employees retired for disability may be reduced, under rules provided by the board of directors of the company, by payment to such employee or his widow under legislation in the nature of workmen's compensation acts.

Section VI provides for the payment of death benefits to dependents of employees who die while in active service of the company. Such payments are designated as "life insurance benefits."

Section VIII is entitled "GENERAL PROVISIONS," and is further subdivided into sections or paragraphs dealing with different topics, some of which are not of sufficient materiality to be set forth or discussed in detail here.

In subsection (1) of section VIII the board of directors reserves the right "to discontinue or modify this retirement plan at any time," except as to income being paid and "contractual rights hereunder" of employees with at least 15 years of service. Such employees would, upon retiring at some time subsequent to such action by the company, whether for age or disability, receive retirement income based upon salary and tenure immediately prior to discontinuance of the plan.

Under subsection (3) an employee who resigns or is dismissed prior to qualifying for payments loses all rights under the plan. An exception exists in favor of an employee with at least 15 years of service who is dismissed other than for cause or poor service. Such employee is to receive a lump-sum settlement determined by a formula based upon salary and tenure prior to dismissal.

The company may require 6 months' written notice of intention to retire.

Payments to an employee retired for disability cease if the employee fails to honor requests to submit to physical examination, render certain information, or, if physically able, meet with the committee appointed by the board of directors to administer the plan.

Subsections (8), (10), (11), (12), (13), (14), and (15) provide as follows:

(8) Disabled employees must take proper care of themselves and have proper treatment. Any retirement income payable on account of disability will be discontinued to any employee who refuses or neglects to follow the recommendations of the Committee.

\* \* \* \* \* \* \*

(10) Any retirement income or monthly instalment payable hereunder may, in the discretion of the Company, be paid to a relative of the employee or of his widow, as the case may be, or other proper person approved by the Committee, to use for the benefit of such employee or widow, if such action is deemed necessary, and the receipt of such person shall be a sufficient discharge.

(11) Any income shall be suspended or terminated in cases of gross misconduct,

or of any conduct prejudicial to the interests of the Company or to the public welfare.

(12) In case of accident resulting in injury of any employee, which shall entitle such employee to benefit under this retirement plan, the employee may elect to accept such benefits or to prosecute such claims at law as he or she may have against the Company. If election is made to accept benefits under this retirement plan, such election shall be in writing and shall release the Company from all claims and demands which the employee, his or her beneficiaries or his widow, may have against it otherwise than under this retirement plan, on account of such accident.

(13) Under such rules as may be adopted by the Board of Directors from time to time, any amount payable under this retirement plan may be diminished by the amount, in whole or in part, of any pension or death benefit to which the employee, his or her beneficiaries or his widow, shall be entitled under the laws now in force or hereafter enacted by any State or country. The rules so adopted shall have uniform application without discrimination between individuals in the same classification.

(14) Neither retirement income nor life insurance benefits hereunder are assignable; any assignment or attempted assignment thereof shall be void and the named assignee shall not acquire any rights against the Company.

(15) The decision of the Company upon all questions having any relation to the fitness of employees to perform any duties shall be final.

The plan was approved by the Superintendent of Insurance of the State of New York.

Employees were not required to submit to a physical examination in order to be eligible for coverage. Decisions relating to disability and to sufficient recovery for resumption of active service rested with the company. All questions respecting administration or interpretation were decided by the board of directors or a committee appointed by it.

On December 16, 1950, petitioner was retired for permanent and total nonoccupational disability. During 1952 he received annual payments in accordance with his rights under the plan in the total amount of $2,717.68. Had he not so retired, and subsequently retired for old age, he would receive no greater retirement benefits. When he reaches age 65 there will be no change in the amount payable.

The payments in question are not required by statute. Employees do not contribute to the plan or pay any amount, as premiums or otherwise. The company withheld income taxes on the amount payable to petitioner in 1952. Petitioner did not include that amount as gross income in his income tax return for 1952.

Petitioner contends that the amount in question constituted an amount "received through accident or health insurance" within the meaning of section 22 (b) (5) of the Internal Revenue Code of 1939.[1]

---

[1] SEC. 22. GROSS INCOME.

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

   \*       \*       \*       \*       \*       \*       \*

(5) COMPENSATION FOR INJURIES OR SICKNESS.—Except in the case of amounts at-

We agree. We hold that petitioner must prevail in the light of the recent decision in *Haynes* v. *United States*, 353 U. S. 81 (1957). Although there are some factual differences between the cases, the problem is basically the same and a like result is required here.

*Decision will be entered for the petitioners.*

tributable to (and not in excess of) deductions allowed under section 23 (x) in any prior taxable year, amounts received, through accident or health insurance or under workmen's compensation acts, as compensation for personal injuries or sickness, plus the amount of any damages received whether by suit or agreement on account of such injuries or sickness, and amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country ;