STATE OF NEW MEXICO ex rel. James D. KERSHNER, Plaintiff-Appellant,

v.

EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Defendant-Appellee.

No. 437–70.

United States Court of Appeals, Tenth Circuit.

Sept. 1, 1971.

Lewis, Chief Judge, dissented.

John J. Duhigg, Albuquerque, N. M. (William J. Torrington, Albuquerque, N. M., on the brief), for plaintiff-appellant.

Michael L. Keleher, Albuquerque, N. M., for defendant-appellee.

Before LEWIS, ADAMS * and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The State of New Mexico brought this action on relation of James D. Kershner to recover from the appellee Equitable Life Assurance Society of the United States the amounts alleged to be due on a group health policy covering James D. Kershner and his dependent family. At the completion of the plaintiff's case, the trial court sustained a motion for directed verdict and entered a judgment in favor of the insurance company.

The pleadings and relevant facts disclose that Kershner was an employee of the University of California working in the State of New Mexico. It is admitted that the insurance company issued a group health and accident policy to the university for the benefit of its employees and that Kershner's dependent minor son Jason was included in the coverage of the policy. Jason was a hopelessly mentally retarded child from the date of his birth. For some time he was cared for in the Kershner home,

* Of the United States Court of Appeals for the Third Circuit, sitting by designation.

but was later committed to the "Los Lunas Hospital and Training School" for his care, custody, education and training.[1] At the time of his commitment the Kershner child was physically helpless, blind, and unable to speak. There was evidence that he was untrainable and that his condition would not improve. Upon commitment pursuant to New Mexico Statutes Annotated § 34–3–8,[2] the District Court of Santa Fe County, New Mexico granted permanent custody of the child to Los Lunas Hospital and Training School and ordered Kershner to pay $50.00 per month to the superintendent of the institution for the maintenance and support of the boy.[3]

The institution maintains a hospital staffed with several full-time doctors and trained nurses generally sufficient to adequately care for those committed to the institution. The hospital facilities are limited to internal medicine care and minor surgery such as might be performed in a doctor's office. If major surgery is necessary, or in cases where medical treatment in the institution's hospital is inadequate, Los Lunas makes arrangements to take the patients to a local hospital for necessary treatment at no expense to the parents, the cost of this outside hospitalization being paid by the institution. The nursing home portion of the hospital is staffed and equipped to care for patients primarily in need of nursing care; trained nurses are on duty twenty-four hours a day. At intervals, due to illness other than his normal condition, Jason was placed in the hospital section of the institution. At all other times he was in a nursing home section where constant nursing care was required.

Disregarding Kershner's $50.00 monthly payments, the State seeks to recover on Kershner's insurance policy the sum of $13,050.00 for Jason's hospitalization at Los Lunas, and $6,372.00 for his nursing home care. The State's claim for the reasonable value of the services rendered to Jason is computed at the rate of $45.00 per day for the time he was in the hospital section of Los Lunas, and at the rate of $12.00 per day while in the nursing home section. Los Lunas neither billed nor attempted to collect any money from Kershner for

1. The Los Lunas Hospital and Training School is an institution created by statute and is operated and maintained by the State of New Mexico "for the care, custody, employment, education and training of mental defectives." N.M.Stat.Anno. § 34–3–2.

2. N.M.Stat.Anno. § 34–3–8, subd. A provides:
   "No filing fees shall be charged at the time of filing the petition in such causes, but court costs, transportation and other necessary expenses in connection with such causes may, at the discretion of the court, be taxed against the parents, guardians or persons having custody and control of such mentally defective persons, and, if a temporary or regular order of commitment is entered committing such person to the institution, then the court shall inquire into the ability of his or her parents, guardians or custodians to contribute to the maintenance and support of such persons, and shall enter such order as shall be found proper for the payment by them, or either of them, to the superintendent of said institution, of a monthly or quarterly sum for such purpose. Where no order of court is entered regarding costs, expenses and maintenance, the court costs shall be defrayed by the court; the expenses and maintenance of the inmate at the institution by the institution."

3. With reference to the commitment order, the parties stipulated:
   "That an order was entered in cause number 1924, the matter of Jason Kershner, a mentally defective person, which was cited as the following, a finding of fact, that the permanent custody of Jason Kershner, a child, a mentally defective person, should be granted to the Los Lunas Hospital and Training School at Los Lunas, New Mexico.
   "And also that the Court decreed: 'It is further ordered and adjudged that James D. Kershner, father of the aforesaid child being, that he is directed to pay to Los Lunas Hospital and Training School, the sum of fifty dollars a month for the said minor's support and including any medical expenses not paid by insurance.'"

the child's hospitalization and nursing home care.

Although the court indicated that the Kershner child was chronically ill, that such illness was not covered by the policy and that the institution's facilities did not meet policy requirements, it is clear that the court's primary reason for denying liability was that the policy provisions required the insurance company to pay only those charges which the insured was obligated to pay.[4] We agree with that interpretation of the policy.

Upon commitment by the state court pursuant to the New Mexico statute, and so long as the commitment order is in effect, Jason became and remains an inmate of the Los Lunas institution, a ward and a dependent of the State of New Mexico. The statute provides, subject to the committing court's order, that "the expenses and maintenance of the inmate at the institution [shall be defrayed] by the institution." The statute also authorizes the court to require the parents, guardians or custodians to contribute to the maintenance and support of an inmate in the institution according to their ability to pay. The legal obligation, however, for the care and maintenance of inmates is that of the institution and it has no statutory authority to make any additional charges.

The rights of the insured are created by the policy which provides that the company, after proof of loss, will "pay the benefits hereinafter set forth with respect to each employee * * * who is insured hereunder and is entitled thereto, in accordance with and subject to the provisions of this policy." The general provisions state that "all benefits for loss for which this policy provides payment will be paid to the insured employee or dependent as they accrue. * * *" The policy provision relating to the coverage for dependents reads:

"Upon receipt of due proof that any dependent–while insured hereunder, shall have been confined to a legally constituted and operated hospital by reason of sickness or non-occupational accidental bodily injury, and that such confinement has extended for the minimum period as set forth below, the Society will, subject to the limitations and provisions hereinafter set forth and to the General Provisions of said Group policy, *pay to the employee* whose dependent–shall have been so confined the following benefits. * *" (Emphasis added.)

The policy then itemizes the payable benefits as "(t)he amount of the *charges* for hospital room and board *incurred* during such hospital confinement * * *," and "(t)he amount of any

---

4. During the course of the trial, with reference to who could collect under the policy, the court commented:

"And as far as the other is concerned, why, there has got to be something to show that Mr. Kershner is responsible before he can collect. And the school can't file a claim, and this appears to be a claim filed by the school under the policy, and the school isn't insured at all. And this, so far, this case has been conducted on the theory that the school is the insured, rather then Mr. Kershner.

\* \* \* \* \*

"Well, I am going to give you every opportunity, but so far you haven't shown that Mr. Kershner has a claim under the policy. Your claim so far is what the school might be claiming, and not what Mr. Kershner has a right to claim. And as I said, the real party

in interest has to be Mr. Kershner."

In granting the motion for a directed verdict, the court said:

"* * * You have asked me here to determine a question that is very, very complicated in my opinion. But in my opinion the school is not the proper party to collect on this policy and there hasn't been an assignment within the meaning of the terms of the policy.

"I further find that it hasn't been shown that the school is the real party in interest. It hasn't been shown that proof of loss was filed within the time provided by the policy. And I just don't think there has been a showing that I could submit this to the jury. Taking all of the facts most—what will I say—advantageous to the plaintiff, why, I still find that there hasn't been a showing that I could give it to the jury."

*charges* (other than charges for room and board, nurses' fees or physicians' fees) made by the hospital in connection with such confinement and *incurred* during that period of the confinement. * * * " (Emphasis added.)

The foregoing provisions, and the insurance contract as a whole, manifestly obligated the insurance company to pay policy benefits to the employee, for only those charges incurred by the insured or his dependent, and only upon proof of loss by the insured.

The terms of the policy are clear that the insured has the right to require policy benefits to be paid to him upon proof of loss, although under prescribed conditions the insurance company may make payments to a hospital or to one rendering services to the insured.[5] If the State's position were accepted, an uninsured could recover under the terms of the policy, even though the insured, who has suffered no loss and is under no legal obligation to pay the State's claims, could not collect the benefits. No authority has been cited, and we have found none, which permits such a result.[6]

The situation is analogous to veterans of the Armed Services of the United States who are entitled to hospital benefits in Veterans' Hospitals without cost to them. Under the statute (38 U.S.C. § 706), the Veterans' Administration is required to furnish hospitalization to veterans who are financially unable to defray the necessary hospital expenses. In United States v. St. Paul Mercury Indemnity Company, 238 F.2d 594, 598 (8th Cir. 1956), the veteran assigned to the Administrator his right to recover proceeds from his insurance policy. Holding that there was no claim to assign and that neither the insured nor the Administrator had a right to recover under the policy for the care and treatment furnished the veteran, the court said:

> "In any such voluntary assignment made, however, the Administrator would in any event not be able to obtain more legally than the veteran himself had. Here, the veteran had a right under his policy to have the insurer pay him only 'for expenses actually incurred' by him. And what he was entitled under the statute to have furnished to him as a veteran beneficence, without obligation of any nature on his part therefor, and what he so accepted, could hardly legally be said, we think, to represent 'expenses actually incurred by the Insured'."

The record establishes that Kershner was not charged for, and incurred no expenses for, the hospitalization and nursing home confinement of his son, and he suffered *no loss*, as he *could not* be and was not subjected to a claim or

---

5. The policy states:
   "Subject to any written direction of the insured employee all or a portion of any benefits provided by this policy on account of hospital, nursing, medical or surgical service *may*, at the Society's option, and unless the insured employee requests otherwise in writing not later than the time for filing proof of loss, be paid directly to the hospital or person rendering such services, but it is not required that the service be rendered by a particular hospital or person." (Emphasis added.)

6. Under a comparable situation in Protective Industrial Insurance Company of Alabama v. Gray, 40 Ala.App. 578, 118 So.2d 289 (1960), recovery was denied the insured. The rehabilitation service of the State of Alabama arranged for and assumed responsibility for an operation on plaintiff's hand. Part of the cost of the hospitalization and medical service was paid by the State. The balance was handled by the hospital as charity. The plaintiff was not billed for any hospital expense and the hospital did not try to collect from her. Plaintiff had not paid the hospital and she was not obligated to pay the hospital. The Court of Appeals of Alabama denied plaintiff any right to recover on her hospital insurance policy, stating that "where there exists no obligation on the part of the plaintiff below, express or implied, to pay anything, the plaintiff cannot be heard to assert a claim for 'items of actual hospital expense.'" See also Reserve Life Insurance Company v. Coke, 254 Miss. 936, 183 So.2d 490 (1966).

demand by the State out of which a legal liability might have arisen.[7]

The purpose of the policy is to protect the insured for hospital and medical care expenditures, not to provide a windfall for the insured or a third party.[8]

Affirmed.

LEWIS, Chief Judge (dissenting).

I must respectfully dissent for, to me, the result reached by the majority appears to be based upon a faulty premise. In simple summation, the main opinion holds that the insurance carrier can have no liability because its principal insured, the father, has incurred no actionable liability. I cannot accept this premise as a matter of law at this point in the proceedings.

Admittedly this unfortunate child was within the insurance coverage had he been treated under other and usual circumstances. Coverage, as such, is not denied. But coverage is now judicially refuted solely because the child was committed to the Los Lunas Hospital by virtue of a state judicial decree which limited, but did not eliminate, the obligation of the father for support and care of his child. After judicial inquiry the New Mexico court, giving due weight to the mandate of the applicable and cited New Mexico statute requiring primary consideration of the ability of the parents to pay, set the continuing obligation of the father to be payment of "the sum of fifty dollars a month for the said minor's support and *including any medical expenses not paid by insurance*". (Emphasis added.) To me, the decree clearly should be interpreted as establishing the ability of the father to pay fifty dollars a month *and* any additional medical expenses incurred for the mi-

nor's benefit and covered by such applicable insurance as might exist. If the father has insurance he has the ability to pay and the decree should be so interpreted, and the father's obligation so established. Surely the New Mexico court's reference to insurance was not meaningless.

It may well be that appellees, for reasons different from those here considered, may have no ultimate liability in this case. For example, claim is made that the services rendered to the child were not made by a hospital within the meaning of that term as contained in the policy. This issue, and others, are not resolved and would seem to involve issues of fact. In any event, I would not absolve the insurance company of any potential liability in the case's present posture.

---

7. See National City Bank v. National Security Co., 58 F.2d 7, 8 (6th Cir. 1932). Compare Graham v. Reserve Life Insurance Company, 274 N.C. 115, 161 S.E. 2d 485 (1968), wherein plaintiff was require to pay the state hospital for the treatment of tuberculosis, and therefore allowed to recover from the insurance company.

8. In Haynes v. United States, 353 U.S. 81, 77 S.Ct. 649, 1 L.Ed.2d 671 (1956), the Court, referring to the purpose of health insurance, said: "Broadly speaking, health insurance is an undertaking by one person for reasons satisfactory to him to indemnify another for losses caused by illness."