DANIEL J. and KATHRYN W. SULLIVAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sullivan v. Commissioner
Docket No. 5202-78.
United States Tax Court
T.C. Memo 1980-265; 1980 Tax Ct. Memo LEXIS 325; 40 T.C.M. (CCH) 718; T.C.M. (RIA) 80265; July 21, 1980, Filed Daniel J. and Kathryn W. Sullivan, pro se. George MacVogelei, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge:* Respondent determined a deficiency in petitioners' income tax for the calendar year 1974 in the amount of $2,400. The issues for decision are (1) whether the amount of $8,469 received by Kathryn W. Sullivan in 1974 from the California State Teachers' Retirement System is includable in whole or in part in petitioners' taxable income in 1974, and (2) whether petitioners are entitled to an exclusion from gross income of $5,200 under section 105(d), I.R.C. 1954, [1] or only to an exclusion under this section of $3,600. *328 All of the facts have been stipulated by a written stipulation of facts together with exhibits attached thereto and certain exhibits stipulated into the record at the trial of this case. The stipulated facts are found accordingly. Petitioners, husband and wife, who resided in Menlo Park, California at the time of the filing of their petition in this case, filed a joint Federal income tax return for the calendar year 1974 with the Internal Revenue Service Center in Fresno, California. Kathryn W. Sullivan (petitioner) was employed by the Palo Alto, California Unified School District as an elementary school music teacher beginning in 1960. She continued her employment with the school district through the spring of 1969. Because of serious problems with both of her eyes which required several operations and extensive hospitalization, petitioner did not teach during the school year 1969-1970. She went back to her position in the school system during the school year 1970-1971, but by the end of that school year found it impossible to continue teaching. While petitioner was teaching in the Palo Alto school system she was entitled to receive her yearly salary either in 9 monthly *329 payments or 12 monthly payments and took the option of receiving it in 12 monthly payments. Petitioner applied for and received a disability allowance from the State Teachers' Retirement System with an effective date of July 1, 1972. Petitioner received a letter dated December 28, 1973, from the State Teachers' Retirement System referring to a report given by her doctor concerning her continued disability and stating that on the basis of that report it had been determined that she was permanently incapacitated for the performance of teaching duties. During the taxable year 1974, petitioner received $8,469.03 as a disability allowance from the State Teachers' Retirement System. The California State Teachers' Retirement System was established to provide a financially sound plan for the retirement, with adequate retirement allowances, of teachers in the public schools of the State. Because of recognition that the assets of the State Teachers' Retirement System were insufficient to meet the obligations of that system already accrued or to accrue in the future with respect to service credited to members of that system prior to July 1, 1972, the State Legislature provided for financing *330 of the Teachers' Retirement System by member contributions, by contributions of the employing agencies based on total salaries of the members, and by contributions from the State of a sum certain for a given number of years for the purpose of payment of benefits. [2]
*331 The California State Teachers' Retirement System provided for retirement because of age and for disability retirement. The statute provided for a disability retirement to become effective upon the date designated by the person as the effective date of disability or upon the day of the month following the last day of service for which salary is payable to the person, whichever is later. The statute provided for an annual disability allowance payable in monthly installments equal to 50 percent of the highest annual salary earned by the disabled person in any one of the three school years immediately preceding retirement, increased by 10 percent of such salary for each child to a maximum of four children. [3]
*332 Durng the time petitioner was employed in the Palo Alto public school system she had a yearly contract or notice of re-employment which would list the school year as beginning July 1 and ending June 30 and provide that the number of days of service was either 180 or 181, with the beginning date of service a date in approximately mid-September and an ending date in approximately mid-June. Each of these notices under "work days during holidays" would list "none." The notice would also list the salary and cumulated days of sick leave which petitioner had. The same type of contract was in effect in the year 1974 for teachers employed in positions comparable to the position in which petitioner had been employed from 1960 to 1971. The State Teachers' Retirement System issued bulletins for the benefit of its participants. One of these bulletins which petitioner received contained a statement to the effect that a person retiring on disability might be qualified "for a disability income exclusion" if they met certain criteria. [4]The California Teachers Association also issued bulletins for the benefit of retired teachers. One of the bulletins issued by the association referred to *333 teachers receiving disability allowances from the State Teachers' Retirement System being entitled "to exclude from taxable income up to $100 a week ($5200 a year)." Petitioners did not include the $8,469.03 received by petitioner from the State Teachers' Retirement System in the income they reported on their 1974 Federal income tax return. However, petitioners did on that return, on line 14, "Adjustments to income (such as 'sick pay,' *334 moving expenses, etc. from line 43)," claim an exclusion of $5,200 which they claimed as "sick pay exclusion" as shown on Form 2440 attached to their return. Respondent in his notice of deficiency determined that the $8,469.03 received by petitioner from the State Teachers' Retirement System was includable in petitioners' income. Respondent further determined that only $3,600 was excludable by petitioners as sick pay and therefore increased petitioners' income by the $1,600 difference in $3,600 and the claimed $5,200 exclusion. It is petitioners' position that they are not required to include any part of the $8,469.03 received by petitioner from the State Teachers' Retirement System in their income since they contend that these amounts are excludable from income under section 104 as amounts received in the nature of amounts under the Workmen's Compensation Act as compensation for personal injury or sickness, or under section 105(c) as payments unrelated to absence from work for permanent loss or loss of use of a member or function of the body computed with reference to the nature of the injury without regard to the period the employee is absent from work. It is petitioners' *335 position that even though under sections 104 or 105(c) no portion of the $8,469.03 is includable in their income, they are entitled under section 105(d), concerning wage continuation plans, to exclude from their reported income $100 a week for 52 weeks, or $5,200. [5]
*336 Petitioners, in support of their position that no part of the $8,469.03 received by petitioner from the California State Teachers' Retirement System is includable in their income, rely on Sibole v. Commissioner,28 T.C. 40 (1957); Watson v. United States, 246 F.Supp. 755 (E.D. Tenn. 1965); and Trappey v. Commissioner, 34 T.C. 407 (1960).They cite no authority for their claim that petitioner's disability allowance is in the nature of workmen's compensation and is therefore excludable under section 104(a)(1). Clearly, from the statutes we have quoted in footnotes 2 and 3, the amount received by petitioner as a disability retirement allowance in 1974 was not workmen's compensation. Section 104(a)(1) deals only with workmen's compensation and not with any other items. Section 104(a)(1) refers only to amounts received under "workmen's compensation acts." The amount petitioner received was under the California statutes providing for teachers' retirement. Therefore section 104 does not entitle petitioners to exclude the $8,469.03 from their income in 1974. The case of Watson v. United States, supra, deals with *337 the question of a sick pay exclusion claimed by a taxpayer under section 105(d). It does not involve any claim by the taxpayer for an exclusion under any other provision of the Code. The issue discussed in that case was the proper interpretation of the provision of section 1.105-4(a)(3)(i), Income Tax Regs., as applicable to the year 1959, which provided that section 105(d) did not apply to an employee who was not expected to work because he had reached retirement age. Trappey v. Commissioner, supra, dealt with the difference in the provisions of the 1939 Code which were applicable when Sibole v. Commissioner, supra, had been decided and the provisions of the 1954 Code applicable to the year 1955 there involved. [6] The Sibole case involved the year 1949. That case involved payments under the California State Employees' Retirement Law which we held, relying on Haynes v. United States, 353 U.S. 81 (1957), constituted amounts received through health insurance as compensation for sickness within the meaning of section 22(b)(5), I.R.C. 1939. *338 Sibole v. Commissioner, supra, has no application to the instant case because the law which was applicable in that case is entirely different from the law applicable in the instant case. In Conroy v. Commissioner, 41 T.C. 685 (1964), affd. 341 F.2d 290 (4th Cir. 1965), we pointed out that the Sibole case and similar cases were not applicable to years governed by the 1954 Code. We then stated (at 692) that, as held in Trappey v. Commissioner, supra, "amounts received through accident or health insurance are not excludable from gross income under the 1954 Code to the extent that they are attributable to contributions by the employer which were not includable in the gross income of the employee or which are paid by the employer" unless all or some portion of the amount is excludable under section 105(d). The law concerning the California Teacher's Retirement System provides for financing of the system through payments by the teacher and by the school district in which the teacher is employed as well as through direct payments by the state. In the instant case, as in Conroy v. Commissioner, supra, *339 it is not possible to tell what portion, if any, of the $8,469.03 was applicable to amounts that may have been paid by petitioner into the retirement fund. It appears that the retirement system under which petitioner retired was basically set up in 1969 and the facts show that petitioner would have had only approximately one year of employment under that system. Therefore, insofar as this record shows, no part of the $8,469.03 would have been attributable to amounts paid into the fund by petitioner. As was pointed out by this Court and the Circuit Court in the Conroy case, in order for a taxpayer to have any amount excluded as being applicable to amounts paid into the retirement fund by the taxpayer "the apportionment obligation placed upon them by section 1.72-15(c) of the Treasury Regulations" would have to be satisfied. Section 72 of the Code deals with the taxability of annuities and certain proceeds of endowment and life insurance contracts. It provides for an exclusion ratio to allow for the recovery of amounts paid into the annuity fund by the person receiving the annuity or paid for the contract under which the endowment or the insurance *340 proceeds are received. There is, however, an exception from the applicability of this general provision of section 72 where an employee will during the first 3 years receive an amount of annuity equal to or in excess of the total contribution he made as consideration for the contract. Petitioner had been receiving disability retirement pay for a year and a half prior to the year 1974 and, if she did in fact make any contribution from her salary to the retirement system, had probably recovered the amount during this period. In any event, here, as in Conroy, the burden would be on petitioner to show that a portion of the payments she received as disability retirement in 1974 was applicable to amounts she paid into the retirement system from her taxable salary. This petitioner has not done. We therefore hold that under section 105(a) petitioners are required to include in income all of the $8,469.03 which is not excludable from their income under section 105(d). Section 105(d) provides that gross income does not include amounts received by an employee through accident or health insurance for personal injury or for sickness if such amounts constitute wages or payments in lieu *341 of wages "for a period during which the employee is absent from work on account of personal injuries or sickness." The exclusion is limited to $100 a week. Petitioner takes the position that she was absent from work for 52 weeks during 1974 on account of sickness. It is respondent's position that since petitioner was only required to work for 36 weeks a year and the other 16 weeks were vacation time, she was only absent from work on account of sickness during the 36 weeks that she would have been expected to be present at her position. Respondent relies on section 1.105-4(a)(2)(ii), Income Tax Regs., which provides that section 105 is applicable only if the employee is absent from work due to sickness and does not apply to a plan for continuing the wages of the employee when he is absent from work for other reasons. Respondent relies on our holdings in Cohen v. Commissioner, 41 T.C. 181 (1963), and Weinroth v. Commissioner, 33 T.C. 58 (1959). In the Weinroth case we held that a teacher who had agreed voluntarily to work on some lesson plans during the summer months when he was not required to be in attendance at his teaching position in *342 New York City was not entitled to exclude $100 a week during the summer months when illness prohibited him from working on such plans. We pointed out that section 105(d) applies only to amounts attributable to periods during which a taxpayer would be at work if he were not sick.The taxpayer in that case was doing volunteer work without extra compensation during the time normally set aside for his vacation when he became ill and unable to work. We therefore held that the taxpayer was not entitled to an exclusion under section 105(d) because he was not absent from work for a period when he was expected to be at work. Following this case, we held in Cohen v. Commissioner, supra, that a teacher who was ill from April 14, 1959, through December 31, 1959, was entitled only to exclude $100 a week under section 105(d) for the weeks when she would have been teaching had she not been ill. We pointed out that the fact that the taxpayer was paid on a basis of 12 months was not material to the decision since the taxpayer would have been paid for the summer and Christmas vacation even though she had not been ill. Petitioner here stated that when she was teaching she was *343 able to elect whether to be paid on the basis of 9 months or 12 months and had elected to be paid on a 12-month basis. Petitioners point out that petitioner also received the disability annuity on a 12-month basis. We dismissed similar facts as being immaterial in Cohen v. Commissioner, supra.In the Cohen case, in answering the distinction the taxpayer attempted to make in her situation and in the Weinroth case, we stated (at 188-189): She contends that the portion of the regulations precluding any exclusion for the summer or other vacation period applies only in the case of a teacher who becomes sick during the summer or other vacation period, whereas she became sick before the summer period commenced. She claims that this provides a distinction between her case and the Weinroth case, where the illness commenced during the summer vacation period. We cannot accept this view. The cited portion of the regulations is followed immediately by the statement that "the exclusion provided under section 105(d) is applicable only * * * to payments attributable to a period when the employee would have been at work but for such personal injury or sickness. *344 " The substance of our holding in the Weinroth case was that the taxpayer's absence from work was not due to sickness or injury, but, rather, to the fact that the period in question was not a working period for him. The same reasoning is applicable in the instant case. [Fn. ref. omitted.] Section 1.105-4(a)(3)(i)(B)(ii), Income Tax Regs., provides that-- an employee who incurs a personal injury or sickness during his paid vacation is not allowed to exclude under section 105(d) any of the vacation pay which he receives, since he is not absent from work on account of the personal injury or sickness. Likewise, a teacher who becomes sick during the summer or other vacation period when he is not expected to teach, is not entitled to any exclusion under section 105(d) for the summer or vacation period. However, if an employee who would otherwise be at work during a particular period is absent from work and his absence is in fact due to a personal injury or sickness, a payment which he receives for such period under a wage continuation plan is subject to section 105(d). This provision, insofar as here applicable, reads exactly as the provision of the regulation involved in *345 Cohen v. Commissioner, supra, and quoted at Footnote 8, page 187, of that opinion. On the basis of Cohen v. Commissioner, supra, we conclude that petitioner is entitled to an exclusion under section 105(d) of only $3,600 in the year 1974. Decision will be entered for the respondent. Footnotes
*. This case was tried before Judge William H. Quealy↩, who subsequently resigned from the Court. By Order dated May 15, 1980, the case was reassigned for disposition. 1. All references are to the Internal Revenue Code of 1954, as applicable to the year here in issue, unless otherwise stated.↩
2. At the trial the parties referred to section 22000 and subsequent sections of the Annotated California Education Code as the provisions governing the Teachers' Retirement System. These sections of the Code were enacted in 1976, reorganizing and to some extent changing provisions with respect to the Teachers' Retirement System. The derivation of the sections was primarily from sections of a 1969 statute which had been extensively amended in 1971. The statute as enacted in 1969 and amended in 1971 was also the statute effective with respect to the year 1974. Sections 13802 and 13804 of the California Education Code, as applicable to the years 1969 through 1974, provide as follows: Sec. 13802. Establishment of State Techers' Retirement System In order to provide a financially sound plan for the retirement, with adequate retirement allowances, of teachers in the public schools of this state, teachers in schools supported by this state, and other persons employed in connection with the schools, the State Teachers' Retirement System is established.The system is a unit of the Agriculture and Services Agency.(Added by Stats. 1969, c. 896, p. 1738, sec. 2.) Sec. 13804. Declaration of financing policies The Legislature recognizes that the assets of the State Teachers' Retirement System are insufficient to meet the obligations of that system already accrued or to accrue in the future in respect to service credited to members of that system prior to July 1, 1972. Therefore, the Legislature declares the following policies in respect to the financing of the State Teachers' Retirement System: (a) Members shall be required to contribute a percentage of salaries earned. (b) The employing agencies shall contribute a percentage of total salaries on which member contributions are based. (c) The state shall contribute a sum certain for a given number of years for the purpose of payment of benefits. (Added by Stats. 1971, c. 1305, p. 2568, sec. 2, operative July 1, 1972.)↩
3. Sections 14210.1, 14260, 14260.1 and 14390 of the Annotated California Education Code applicable in 1972 and 1974 provide as follows: Sec. 14210.1 Effective date of disability; date of accrual of disability allowance; limitations A disability shall become effective upon the date designated by the person as the effective date of disability, or upon the day of the month following the last day of service for which salary is payable to the person, whichever is later. In no event shall the disability become effective or disability allowance begin to accrue earlier than the first day of the month in which the application is received by this system in Sacramento, or earlier than the date upon and continuously after which he is determined to the satisfaction of the board to have been mentally incompetent, or earlier than the date upon and continuously after which the person is determined to the satisfaction of the board to have been disabled. (Added by Stats. 1972, c. 1010, p. 1867, sec. 41, urgency, eff. Aug. 17, operative July 1, 1972.) Sec. 14260. Allowance upon qualification for disability Upon * * * qualification for disability, a member shall receive a * * * disability allowance which shall consist of * * * an annual allowance, payable in monthly installments, equal to 50 percent of the highest annual salary earned in any one of the three school years immediately preceding retirement, increased by 10 percent of such salary for each child to a maximum of four such children * * *. A stepchild or adopted child acquired subsequent to eligibility for disability benefits shall not be entitled to any benefit and shall be excluded in the calculation of benefits under this section. (Added by Stats. 1969, c. 896, p. 1738, sec. 2. Amended by Stats. 1971, c. 407, p. 783, sec. 33; Stats. 1971, c. 1305, p. 2586, sec. 120, operative July 1, 1972; Stats. 1972, c. 1089, p. 2034, sec. 18, urgency, eff. Aug. 18, 1972, operative July 1, 1972.) Sec. 14260.1 Recalculation of allowance if specified conditions exist Notwithstanding the provisions of Section 14260, any member who applied for a disability allowance to be effective during July, August or September 1972, and who has been or is in the future approved for a disability allowance with an effective date in July, August or September 1972, shall have that allowance recalculated effective on the first day of the month for which the disability allowance was or is approved, if the following conditions exist: (a) The member has five or more years of credited service, the last five of which have been served in this state, and has not attained age 60, and (b) Earned no service credit in the first two school years immediately preceding and less than a year of service credit in the third school year immediately preceding the effective date of the allowance, then the benefit shall be equal to 50 percent of the highest annual salary earned in any one of the four school years immediately preceding the effective date of the disability allowance, increased by 10 percent of such salary for each child to a maximum of four such children. All other provisions of Section 14260 shall be applicable to a member who receives an allowance pursuant to the provisions of this section. (Added by Stats. 1973, c. 789, p.    , sec. 1.) Sec. 14390. Accrual of benefits; cessation of allowance on death of recipient (a) The retirement or disability allowance begins to accrue on the first day of the month in which the retirement or disability is effective. (b) On death of the retirant, a person receiving a disability allowance or a person who is reinstated to membership, the allowance ceases on the last day of the month preceding that in which the death or reinstatement occurs. (c) Family benefits begin to accrue on the first day of the month in which the death of the member occurs.
(d) Option benefits begin to accrue on the first day of the month in which the retirant died. (Added by Stats. 1972, c. 1089, p. 2037, sec. 23, urgency, eff. Aug. 18, 1972, operative July 1, 1972.)↩
4. The full statement was as follows: INCOME TAX INFORMATION AND ASSISTANCE The State Teachers' Retirement System is not empowered to give specific tax information or to implement provisions of the tax laws. You should be aware of the fact that the disability allowance you receive is considered taxable income by the Internal Revenue Service and the California State Franchise Tax Board, whether or not you continue to reside in California. There are different methods of reporting your disability allowance. You may qualify for a disability income exclusion if you meet certain criteria. However, only representatives of the Internal Revenue Service and the California State Franchise Tax Board can assist you in making that determination.↩
5. Section 105 provides in part as follows: SEC. 105.AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS. (a) Amounts Attributable to Employer Contributions.--Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer. * * *
(c) Payments Unrelated to Absence From Work.--Gross income does not include amounts referred to in subsection (a) to the extent such amounts-- (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent (as defined in section 152), and (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.
(d) Wage Continuation Plans.--Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. * * *↩
6. In explaining the distinction, the Court in Trappey v. Commissioner, 34 T.C. 407, 408 (1960), stated as follows: This Court, citing and following Haynes v. United States, 353 U.S. 81, twice held under circumstances substantially similar to those here present that disability retirement pension payments are received through health insurance and were excluded from gross income under section 22(b)(5) of the 1939 Code. Charles H. Jackson, 28 T.C. 36; J. Wesley Sibole, 28 T.C. 40. Those cases would be controlling here if the same law applied. However, it does not apply, but, instead, section 104(a)(3) must be considered. What change did it make? Section 22(b)(5) is titled "Compensation for Injuries, or Sickness." It excluded from gross income "amounts received through accident or health insurance * * *, as compensation for personal injuries or sickness." The title of section 104 is "Compensation for Injuries of Sickness" and in (a)(3) it also excludes from gross income "amounts received through accident or health insurance for personal injuries or sickness." However, it qualifies that exclusion by the following limitation: (other than amounts received by an employee, to the extent such amounts (A) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (B) are paid by the employer); * * * The parenthetical qualification is the only change in the law material hereto made by the 1954 Code. The Court in the Trappey↩ case concluded that the exclusion from gross income was applicable only to that part of the payment not attributable to contributions by the employer. The Court then stated that the parties had covered by stipulation the allocation between contributions made by the employer and the employee.